**Richard J. SOUTHALL, Trustee in Bankruptcy of Williamson Manufacturing Company, a Bankrupt, Plaintiff,**

**v.**

**Harry COHEN and Sidney Ginsberg, d/b/a Union Steel Company, Defendants.**

**No. 16501-1.**

United States District Court,
W. D. Missouri, W. D.

March 13, 1970.

Paul E. Berman, Berman, DeLeve, Kuchan & Chapman, Charles N. Bono, Kansas City, Mo., for plaintiff.

Rodger J. Walsh, Kansas City, Mo., for defendants.

### MEMORANDUM AND ORDER

JOHN W. OLIVER, District Judge.

This is an action to recover an alleged voidable preference under Section 60a and b of the Bankruptcy Act (11 U.S.C. § 96(a) and (b)). The jurisdiction of the Court is provided by 11 U.S.C. §§ 96(b) and 1(10). Although factual conclusions and legal conclusions are in dis-

pute, there is no dispute as to the specific facts. The agreement of the parties as to specific facts is reflected by a Stipulation of Facts (as referred to in Judge Collinson's Pretrial Order filed October 31, 1968); separate Proposed Standard Pretrial Orders No. 2 (filed by the plaintiff on October 19, 1967, and by the defendant on October 9, 1968); and the suggested findings of fact (filed by the plaintiff on August 7, 1969, and by the defendant on January 29, 1970). Counsel have stated that they wished to adduce no additional evidence.

## FINDINGS OF FACT

We adopt those findings of fact submitted by the plaintiff and admitted to be true by defendants. We will make additional findings of our own.

1. On May 4, 1966 defendant Harry Cohen, together with Abe Rosenberg, acquired by purchase two thousand six hundred eighty-five (2,685) shares of the corporate capital stock of Williamson Manufacturing Company, a corporation, from the Noel Investment Company, Inc., a corporation, for the consideration of One and no/100 ($1.00) Dollar. (Bill of Sale dated May 4, 1966, found on the last typewritten page of Pl.Ex. 7; and Pl. Ex. 5, page 9, lines 10–20).

2. Thereafter, Harry Cohen became a director of Williamson Manufacturing Company and executed documents as Vice President of said company. (Pl.Ex. 8, Resolution of Board of Directors of Williamson Manufacturing Company dated May 5, 1966, signed by Harry Cohen as director; signature card of Columbia National Bank dated May 6, 1966, signed by Harry Cohen as Vice President; Pl. Ex. 4, check #4240 of Williamson Manufacturing Company signed by Harry Cohen as "V.P." dated June 17, 1966; Pl. Ex. 5, page 9, lines 10–20, admission of defendant Harry Cohen to paragraph 2 of proposed stipulation filed in pretrial conference).

3. On May 31, 1966, the assets of Williamson Manufacturing Company were $45,378.13, and the liabilities were $68,-592.90. (Pl.Ex. 7–A, page 2 of balance sheet of Williamson Manufacturing Company).

4. On May 20, 1966, Williamson Manufacturing Company purchased steel material from Union Steel Company on net terms for the amount of $15.30. (Pl.Ex. 2, invoice of Union Steel Company dated May 20, 1966; defendants admitted paragraph 5 of plaintiff's proposed stipulation of facts which set forth this fact).

5. On May 28, 1966, Williamson Manufacturing Company purchased additional steel material from Union Steel Company on net terms in the amount of $1,-536.98. (Pl.Ex. 3, invoice of Union Steel Company dated May 28, 1966; defendants admitted paragraph 5 of plaintiff's proposed stipulation of facts which set forth this fact).

6. On June 17, 1966, Harry Cohen acting as Vice President of Williamson Manufacturing Company signed a check of Williamson Manufacturing Company in the amount of $1,552.28 payable to Union Steel Company. (Pl.Ex. 4, cancelled check of that date).

7. On June 18, 1966, a Saturday, Harry Cohen attended a meeting of creditors of Williamson Manufacturing Company at which statements were made to its creditors that Williamson Manufacturing Company owed far more than it was worth; that if the company was liquidated, the creditors would receive little or nothing and that Mr. Cohen was there as a principal of the company to make a modest offer of settlement to the creditors. Plaintiff offered witnesses to prove such fact, but counsel for defendants admitted that that was the gist of the meeting; and Mr. Cohen was there. (Tr. p. 18, lines 2–22; p. 19, lines 1–13; D.Ex. 1, p. 12, lines 22–25; p. 30, line 1; p. 32, lines 9–24).

8. Union Steel Company deposited the check to its account on June 20, 1966 at the Empire State Bank in Kansas City, Missouri, and said check was thereafter paid. (Pl.Ex. 4).

9. On June 27, 1966 an Involuntary Petition in Bankruptcy was filed against Williamson Manufacturing Company in

the District Court of the United States for the Western District of Missouri, In Bankruptcy No. 32920. (Pl.Ex. 9, Involuntary Petition contained therein).

10. On July 27, 1966, Williamson Manufacturing Company was adjudicated a bankrupt. (Pl.Ex. 9, Order of Adjudication).

11. The plaintiff is Richard J. Southall, the appointed Trustee in Bankruptcy of Williamson Manufacturing Company. (Pl.Ex. 9, Order of Appointment of Trustee).

12. The schedules filed in bankruptcy August 30, 1966, disclosed debts of $45,082.12 and assets of $27,157.87. (Tr. p. 16, lines 2–12, undisputed and admitted by the defendants; Pl.Ex. 9, Schedules of Assets and Liabilities).

13. The assets of the bankruptcy estate have been sold at public auction and produced a gross fund of $13,789.61, or a net sum of $11,690.78 after deduction of auction expenses. (Plaintiff offered to prove by testimony of Trustee; admitted by defendants necessity of proof waived. Tr. p. 16, lines 2–15; Pl.Ex. 9, Trustee's report of sale).

14. There are claims of secured and unsecured creditors in the total amount of $45,082.12, listed in the Bankruptcy Schedules. (Pl.Ex. 9, Summary of Debts and Assets, Schedules of Secured and Unsecured Creditors).

15. There are approximately 97 listed unsecured creditors of Williamson Manufacturing Company totaling $28,121.83 in debts owed to them. (Pl.Ex. 9, Schedule of Unsecured Creditors).

16. Defendants Harry Cohen and Sidney Ginsberg during all the times mentioned from May 4, 1966, were partners and co-owners of Union Steel Company. (Conceded by defendants in Proposed Standard Pretrial Order No. 2, admitted by defendants in Proposed Standard Pretrial Order No. 2 III, L.Pl.Ex. 6, lines 9–20).

17. The Bankrupt, Williamson Manufacturing Company, transferred its property to Union Steel Company on June 20, 1966. (The check payable to Union Steel Company was cashed and the cash funds of Williamson Manufacturing Company in the amount of $1,552.28 were thereby transferred to Union Steel Company).

18. The transfer took place within four months before the filing of a petition initiating a proceedings against Williamson Manufacturing Company, the bankrupt, under the Bankruptcy Act. (The transfer occurred on June 20, 1966 and an Involuntary Petition was filed against the bankrupt on June 27, 1966).

We conclude that on June 17, 1966 the Williamson Manufacturing Company was insolvent. The books of the Company indicate an excess of liabilities over assets on May 31, 1966. The finding of bankruptcy was made on June 27, 1966. Furthermore, at a meeting with the corporation's creditors on June 18, 1966, defendant Cohen told the creditors that the company owed more than it was worth. Defendants have never alleged nor presented any evidence to rebut plaintiff's evidence showing the corporation to be insolvent on May 31, 1966 and on June 27, 1966.

We further conclude that defendants had knowledge of the insolvency or had reason to know of the insolvent state of the company at the time of the transaction. The fact that Mr. Cohen was owner and vice president of the insolvent company, his statements at the creditors meeting concerning insolvency, and his testimony on January 11, 1967 (Pl.Ex. 5 p. 13) establish conclusively that at the time of the transfer in question the defendant was aware or had good reason to believe that the Williamson Manufacturing Company was insolvent.

We adopt as our own plaintiff's suggested legal conclusions [although not admitted] that:

The effect of the transfer enabled Union Steel Company to obtain a greater percentage of the debt due it by Williamson Manufacturing Company than some other creditor of the same class. (Union Steel Company was an unsecured creditor of Williamson Manufacturing Company. It received 100% of the amount due it on

June 20, 1966. At that time there were other creditors of the same class (i. e., Stephenson & Yost Steel Company, Pl. Ex. 9, Schedule of Unsecured Creditors listing 97 such creditors; Tr. p. 18, lines 1–23). The unsecured creditors have total claims of $28,121.83. After sale of the assets of the bankrupt estate, the Trustee has realized only $11,690.78 for distribution to all of the creditors of the bankrupt. Therefore, it is obvious that none will receive as much as did Union Steel Company).

We therefore conclude that:

1) The Williamson Company made or suffered a transfer of its property;

2) While insolvent;

3) Within four months of bankruptcy;

4) The effect of which transfer was to enable Union Steel Company to obtain a greater percentage of its debt (assuming at this point that the transaction was a debt transaction); and

5) At the time of the transfer the defendants had knowledge or reasonable cause to believe that the debtor was insolvent.

The only issue in contention is whether the sale and payment for the steel was a cash transaction or whether there was an extension of credit, which resulted in a voidable preference when payment was made.

The law is clear that "where the debtor engages in a cash transaction whereby he purchases goods and pays a reasonable sum for them, such payment does not constitute a preference under § 60." Collier on Bankruptcy, ¶ 60.23. "But a purchase of goods to be paid for in 10 or 30 days is not in fact a cash transaction, and cannot, by agreement of the parties or a usage of merchants be regarded as such under the Act." Ibid, n. 2.

The key determination is whether or not there was an extension of credit. "An extension of credit no matter how brief establishes an antecedent debt under the Bankruptcy Act." In re Helms Veneer Corp., 287 F.Supp. 840, 843 (W. D.Va., 1968). "Time sometimes can be disregarded when it is insignificant," but "the consent to become a general creditor for an hour, that was imported, even if not intended to have that effect, by the liberty allowed to the firm [the creditor] broke the continuity and established the loan as part of the assets." National City Bank v. Hotchkiss, 231 U.S. 50, 58, 34 S.Ct. 20, 21–22, 58 L.Ed. 115 (1913). Compare Ricotta v. Burns Coal & Building Supply Co., 264 F.2d 749, 751, n. 1 (2d Cir. 1959) (payment later than the date of delivery, if not subject to provisions of § 67(b) in payment of an antecedent debt).

The Eighth Circuit in Bostian v. Levich, 134 F.2d 284, 286 (8th Cir., 1943), recognized that whether a transaction is a cash or credit transaction is not merely a question of law but also a question of fact. For example, in Cooper Petroleum Co. v. Hart, 379 F.2d 777 (5th Cir., 1967), the Court held that sales to the bankrupt on terms of ten days constituted an extension of credit and gave rise to an antecedent debt.

Defendant delivered the steel on May 20 and 28, 1966. At that time he was aware of the insolvent status of the company. He did not demand cash payment at that time. As vice president and owner of the company he had access to the books of the company which show a negative cash balance of $828.91 on May 31, 1966, only three days after the $1,536.98 shipment of steel. Mr. Cohen bought the company on May 4, 1966. He testified [1]

---

1. Defendants have objected to Exhibits 5 and 6, which consist of proceedings before the Referee in Bankruptcy on January 11, 1967, in which Mr. Lindy and Mr. Cohen testified, and on March 2, 1967, in which Mr. Cohen testified. The basis for the objection is that Mr. Cohen's testimony should not be used for proof of insolvency since that is a fact which cannot be admitted. The Court has not relied on Mr. Cohen's testimony to support its findings of insolvency. The exhibits are admitted for all other purposes.

that he did not know at that time whether it had any money in the bank and never found out (Exh. 5, pp. 12–13). Furthermore, he testified that he borrowed $4,000 on behalf of the company "to pay off some bills." (Exh. 5, p. 13). He further testified that he knew that the company did not have money in the bank on the date he borrowed the $4,000 (the same date the company issued payment to him) "because the checks were coming back." Prominent among the bills to be paid off was the bill to Union Steel Company. It is obvious that Mr. Cohen could not have expected to conduct a cash transaction since he was aware that the company had no cash to pay for the shipment. In fact, he must have been aware that the company would have to borrow to meet its debt to him. He naturally was less hesitant to sell to an insolvent company without demanding immediate payment than a businessman ordinarily would, since he had control of the debtor corporation and knew that if a loan or a payment on an account receivable was obtained by the company he would, as he did, be able to repay the money owed to himself before any other creditor would receive any payment.

Testimony of Mr. Cohen on March 2, 1967 provides further evidence that the sale was never intended to be a cash transaction:

Q. You sold the steel, according to Trustee's Exhibit No. 1, on May 28th.

A. That is right.

Q. And the terms, it says, were net.

A. *Well, but it didn't have the money.*

Mr. Cohen admits that payment for the steel was not made when it was due. But he adduces no evidence to show that he made any effort to repossess the steel or achieve payment. Rather, his actions are consistent with an intention to extend credit. Compare Engelkes v. Farmers Co-Operative Co., 194 F.Supp. 319 (N.D.Iowa, 1961).

Defendants' contention that the subject of this litigation was not the payment of an antecedent debt but was a cash transaction is supported in his brief solely by one authority, First National Bank of Clinton v. Julian, 383 F.2d 329 (8th Cir., 1967). First National Bank of Clinton v. Julian did not concern itself with the question presented in the instant case, but rather held that in a floor plan financing arrangement, a "substitution, exchange, or renewal of securities does not constitute a preference if there is no diminution of the debtor's estate." Id. at 334. The *First National Bank* case does not discuss "cash transactions" nor does it discuss delivery of goods and subsequent payment.

In summary we find that the trustee has proved by a preponderance of the evidence that the payment of $1,552.28 to Union Steel Company was a transfer of the debtor's property to or for the benefit of a creditor for or on account of an antecedent debt (the money owed for the steel) while the Williamson Manufacturing Company was insolvent and within four months of bankruptcy, the effect of which was to enable defendants to obtain a greater percentage of its debt than other creditors of the same class; and that defendants knew or had reasonable cause to believe that Williamson Manufacturing Company was insolvent. These circumstances indicate that a voidable preference exists with respect to the amount of $1,552.28, within the meaning of § 60a and 60b of the Bankruptcy Act, 11 U.S.C. § 96(a) and (b). See Collier on Bankruptcy, ¶ 60.02, p. 758–9. Judgment therefore is for the plaintiff.

For the reasons stated, it is

ORDERED that counsel for plaintiff within ten (10) days of the date of this order prepare an order of judgment in accordance with the decision in this opinion, submit it to counsel for defendants for approval as to form, and present it to the Court for signature. It is further

ORDERED that this Memorandum and Order shall be filed as the Court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.