In re SACO LOCAL DEVELOPMENT CORP. Leather Comfort Corporation Kirstein Leather Co. d/b/a Saco Tanning Corp. Kirstein Split Corporation, Debtors.

Roderick R. ROVZAR, Trustee,

v.

CHEMICAL SALES AND SERVICE CO., Defendant.

Bankruptcy Nos. 281–00151 to 281–00154. Adv. No. 281–0194.

United States Bankruptcy Court, D. Maine.

May 26, 1983.

---

Gregory Tselikis, Charles Miller, Bernstein, Shur, Sawyer & Nelson, Portland, Me., for plaintiff.

Bruce Coggeshall, George Marcus, Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, Me., for defendant.

## MEMORANDUM DECISION

FREDERICK A. JOHNSON, Bankruptcy Judge.

The trustee seeks to recover, as avoidable preferences under section 547(b) of the Bankruptcy Code, payments received by Chemical Sales and Service Company from the debtor, the Saco Tanning Division of Kirstein Leather Company. 11 U.S.C.A. § 547(b) (1979). Chemical Sales argues that the trustee has failed to establish an element of section 547(b). In addition, it argues that the challenged transfers are protected from avoidance by the net result rule and section 547(c)(4). 11 U.S.C.A. § 547(c)(4) (1979). The court concludes that the trustee successfully established all the elements of section 547(b) and that Chemical Sales gave $8,360.30 in new value under section 547(c)(4).

The debtor filed a petition under chapter 11 on March 26, 1981. On May 20, 1981, the case was converted to chapter 7, and a trustee was appointed. The trustee demands judgment under section 547(b) against Chemical Sales in the amount of $30,451.27, the total of four allegedly preferential transfers. Chemical Sales asserts that the trustee has failed to establish that the transfers enabled it to receive more than it would receive under chapter 7 as

required by section 547(b)(5). In the alternative, it argues that the net result rule and section 547(c)(4) limit its liability.

■ Preliminarily, the court must rule on two evidentiary matters which it took under advisement during the hearing. Chemical Sales made an oral motion to strike exhibits eleven and twelve from the record. These exhibits are consolidated financial statements for Kirstein Leather Company and Leather Comfort Corporation. Chemical Sales argues that the exhibits should be excluded because the notes, which are an integral part of the financial statements, are missing. The court agrees and the exhibits are stricken.

■ Secondly, the trustee objected to the testimony of Robert S. Thing, a certified public accountant. Thing testified that under generally accepted accounting principles a check is deemed received when possessed and paid when issued. Because of previous decisions of this court, the court concludes that this testimony is irrelevant and will not be considered.

■ Section 547(b) allows the trustee to recover a transfer of the debtor's property from a creditor if five elements are established: the transfer 1) was made to the creditor; 2) on account of antecedent debt; 3) while the debtor was insolvent; 4) within 90 days before filing; and 5) enabled the creditor to receive more than it would have received under chapter 7. The trustee bears the burden of proving all five elements. *Rovzar v. Biddeford & Saco Bus Garage, Inc. (In re Saco Local Development Corp.),* 25 B.R. 876, 878 (Bkrtcy.D.Me.1982).

Chemical Sales does not seriously dispute that the trustee has established elements one through four. It argues, however, that the trustee failed to prove the fifth element. Section 547(b)(5) provides:

> [T]he trustee may avoid any transfer of property of the debtor—that enables such creditor to receive more than such creditor would receive if—
>
> (A) the case were a case under chapter 7 of this title;
>
> (B) the transfer had not been made; and
>
> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

In this proceeding, the trustee seeks to establish this element by introducing as evidence the documents on file in the debtor's case,[1] including schedules of assets and liabilities, proofs of claims, and applications for administrative expenses. The court, upon the trustee's oral motion at the hearing, ruled that it would take judicial notice of the case file contents. Chemical Sales strenuously objects to the court taking judicial notice.[2] Thus, the court must decide whether judicial notice is appropriate in this proceeding.

Federal Rule of Evidence 201,[3] dealing with judicial notice, provides:

> **(a) Scope of rule.** This rule governs only judicial notice of adjudicative facts.
>
> **(b) Kinds of facts.** A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.
>
> **(c) When discretionary.** A court may take judicial notice, whether requested or not.

---

1. The "case" is the entire bankruptcy case as distinguished from a "proceeding," such as this proceeding, which arises in or is related to the case. A bankruptcy case may contain hundreds of proceedings.

2. During the hearing, Chemical Sales requested a hearing on the judicial notice issue pursuant to Federal Rule of Evidence 201(e). Rule 201(e) provides: "A party is entitled upon timely request to an opportunity to be heard as to

the propriety of taking judicial notice and the tenor of the matter noticed." Because Chemical Sales argued the issue extensively at the hearing and in its briefs, the court finds that it has already been provided with an opportunity to be heard as required by the rule.

3. Bankruptcy Rule 917 makes the Federal Rules of Evidence applicable in bankruptcy cases.

**(d) When mandatory.** A court shall take judicial notice if requested by a party and supplied with the necessary information.

**(e) Opportunity to be heard.** A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken.

**(f) Time of taking notice.** Judicial notice may be taken at any stage of the proceeding.

The language of this rule is not readily applicable to the bankruptcy situation. The facts contained in documents on file in a bankruptcy case are not generally known within the court's territorial jurisdiction or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."[4] Nevertheless, bankruptcy courts have generally taken judicial notice of the case documents in making the "receive more" analysis, usually without analyzing their decision in terms of Rule 201. *See, e.g., Southall v. Cohen (In re Williamson Manufacturing Co.),* 311 F.Supp. 217, 219 (W.D.Mo.1970); *In re Schindler,* 223 F.Supp. 512, 529 (E.D. Mo.1963), *rev'd on other grounds sub nom. American National Bank & Trust Co. v. Bone,* 333 F.2d 984 (8th Cir.1964); *In re Smith,* 205 F.Supp. 30, 32 (E.D.Pa.1962); *see also Mann v. Shepard (In re Gervich),* 570 F.2d 247, 253 (8th Cir.1980) (judicial notice in fraudulent transfer action); *IIT v. Lam (In re Colorado Corp.),* 531 F.2d 463, 467 (10th Cir.1976) (judicial notice of creditors' claims); *In re Harland,* 3 B.R. 597, 597 (Bkrtcy.D.Neb.1980) (judicial notice in chapter 13).

 This court concludes that it is appropriate to take judicial notice of the debtor's bankruptcy case as a whole, including the documents filed in the case. A bankruptcy case is unique because it is composed of many individual parts. Within the debtor's case itself, the bankruptcy judge considers many matters which affect the amount of the dividend to unsecured creditors, including applications to compromise, notices of intent to sell or abandon property of the estate, objections to claims and exemptions, and applications for fees by trustees and attorneys. In addition, the trustee or a third party may file adversary proceedings, which also affect the dividend. The judge will consider complaints for relief from stay, to avoid preferential or fraudulent transfers, to turnover property of the estate, to sell free and clear of liens, and objecting to certain claims. It would be impossible for bankruptcy judges to ignore all the other decisions they have made in a bankruptcy case and related proceedings when deciding the matter before them.

In addition, bankruptcy judges would be remiss if they did not take this information into consideration. Bankruptcy judges may be the only individuals involved in a bankruptcy with an overall view of the case. As stated by the Seventh Circuit in *Woodmar Realty Co. v. McLean (In re Woodmar Realty Co.),* 294 F.2d 785, 788 (7th Cir.1961), *cert. denied,* 369 U.S. 803, 82 S.Ct. 643, 7 L.Ed.2d 550 (1962), where a party contended that the bankruptcy court could not take judicial notice of 20 years of previous proceedings in the case, "it is elementary that the court below was duty bound to take judicial notice of its records and files in this cause. . . ."

Having concluded that the court should take judicial notice of the bankruptcy case, the court must decide whether this information allows it to make the section 547(b)(5) determination. Chemical Sales argues that the court must estimate the amount of the dividend which will ultimately be paid to general unsecured creditors and compare this amount to the amount received by it. This is not so. It is only necessary for the court to determine that Chemical Sales, a general unsecured creditor, will, if paid to the extent provided by the Code, receive less than 100% of its claim. Any dividend less than 100% ensures that, unless the transfer is avoided, Chemical Sales will re-

---

4. The facts are "generally known" to the bankruptcy judge, however, who has handled the case from its inception, in this case since March of 1981.

ceive more than it would receive if it were paid to the extent provided by the provisions of the Code. *Palmer Clay Products Co. v. Brown,* 297 U.S. 227, 229, 56 S.Ct. 450, 450–51, 80 L.Ed. 655 (1936) (proceeding under Bankruptcy Act); *Barash v. First Galesburg National Bank,* 658 F.2d 504, 508–09 (7th Cir.1981).

This may be demonstrated as follows:

(Assume a 99% dividend)

| | | | |
|---|---|---|---|
| Chemical Sales claim at Debtor's filing | 26,026.15 | | |
| Dividend | (26,026.15 x .99) | 25,765.89 | |
| Add Transfers | | 30,451.27 | |
| TOTAL | | | 56,217.16 |
| Claim if transfer had not been made | 56,477.42 | | |
| Dividend | (56,477.42 x .99) | | |
| TOTAL | | 55,912.65 | 55,912.65 |

It is clear that if Chemical Sales is permitted to retain the preferential transfers, assuming a 99% dividend, it will receive $304.51 more than it would receive under the Code. A smaller, more realistic, dividend makes the difference more dramatic. A 50% dividend, for example, would mean that Chemical Sales would receive $15,-225.63 more.

A review of the file of the debtor's case reveals that if Chemical Sales is paid to the extent provided by the provisions of the Code it will receive substantially less than 100% of its claim.

Chemical Sales received $30,451.27 in preferential transfers under section 547(b). Chemical Sales argues that the net result rule limits its liability for the preferential transfers. This court has previously ruled that the net result rule has been replaced in the Code with section 547(c)(4)'s subsequent

advance rule. 11 U.S.C.A. § 547(c)(4) (1979); *see Rovzar v. Prime Leather Finishes Co. (In re Saco Local Development Corp.),* 30 B.R. 859, at 862 (Bkrtcy.D.Me. 1983).

Section 547(c)(4) provides:

The trustee may not avoid under this section a transfer—to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.

The section 547(c) defenses are affirmative defenses and the burden is on the creditor to establish them. *Rovzar v. Diamond International (In re Saco Local Development Corp.),* 25 B.R. 880, 881 (Bkrtcy.D.Me.1982). Section 547(c)(4) requires the creditor to show that *after* the preferential transfer the creditor extended new value to the debtor, which is unsecured and remains unpaid. *Prime Leather Finishes Co.,* at 862.

In this proceeding, the evidence reveals the following transactions:

| | Preference [5] | New Value [6] | Net Preference |
|---|---|---|---|
| 1/23/81 | $7,961.25 | | |
| 1/26/81 | $9,611.27 | | |
| 2/7–10/81 | | $8,360.30 | $ 9,212.22 |
| 2/10/81 | $5,034.92 | | $ 5,034.92 |
| 3/6/81 | $7,843.83 | | $ 7,843.83 |
| | | | $22,090.97 |

■ Using the language of section 547(c)(4), Chemical Sales gave new value in

---

**5.** For the purposes of section 547(c)(4), the transfer occurs on the date the check is delivered or received. *Rovzar v. Commonwealth Laboratories, Inc. (In re Saco Local Development Corp.),* Adv. No. 281–0226, slip op. at 3 (Bankr.D.Me. Dec. 28, 1982). The treasurer for Chemical Sales testified that checks from the debtor were recorded in the company ledger on the dates they were received. The ledger reflects the dates set forth in the chart.

**6.** Chemical Sales shipped additional goods worth $8,360.30 to the debtor and sent the debtor an invoice on February 17, 1981. For the purposes of section 547(c)(4), a creditor extends new value to the debtor when it ships goods to the debtor not when it sends out the invoice. *Prime Leather Finishes Co.,* at 862. The treasurer for Chemical Sales testified that shipments generally occurred seven to ten days prior to the invoice date. Therefore, the goods were shipped between February 7 and 10, 1981.

the amount of $8,360.30 *after* the preferential transfers of January 23 and January 26, which totalled $17,572.52. Thus, Chemical Sales qualifies for the section 547(c)(4) exception in that amount.

From the above chart it is clear that Chemical Sales received avoidable transfers totalling $22,090.97.

An appropriate order will be entered.