In re Robert L. DUCHARME, Bankrupt.

In re ACE STORE FIXTURES & CON-STRUCTION, INC., Bankrupt.

In re Frank A. ROBINSON, III d/b/a Robinson & Robinson General Contractor, Bankrupt.

In re Earl H. WHITE, Jr., Bankrupt.

In re Jeanne W. WHITE, Bankrupt.

In re Melvin Edward COLBY d/b/a Frontier Store, Bankrupt.

Bankruptcy Nos. 77–203, 77–220, 77–386, 78–14, 78–15 and 78–195.

United States Bankruptcy Court, D. Rhode Island.

Feb. 22, 1984.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

After hearing on December 1, 1983, and by orders of this Court dated December 13, 1983, David A. Schechter, Esq., was denied compensation for services performed as trustee in the captioned Old Act cases. Upon consideration of the trustee's extraordinary and unjustified delay in his handling of the cases to which he was appointed, the Court felt that compensation was unwarranted. Because the December 13 orders have been appealed, the Court has summarized below its findings of fact and conclusions of law, pursuant to Bankruptcy Rule 8006.[1]

---

**1.** The December 13, 1983 orders did not elaborate on the Court's reasons for denying compen-

1.   Mr. Schechter was appointed trustee in the captioned cases more than five years ago.

2.   These were all liquidation cases, in which no extraordinary problems were present, and which, in the experience of this Court, should have required six months, or one year at most, to conclude.[2]

3.   In October, 1979, after seven months of telephone calls and letters from the Office of the Clerk of the Bankruptcy Court seeking explanation for the delinquent status [3] of the 1977–1978 cases, Mr. Schechter was required by Order to Show Cause to explain his failure to resolve them.   The reasons advanced by Mr. Schechter in October, 1979, such as missing files and stale dated checks, were identical, in most instances, to those which he would cite again in June, 1980.   *See* paragraph 6 *infra.*

4.   When in June, 1980, the cases still remained open, Mr. Schechter was requested by the Deputy Clerk to furnish estimated closing dates for the cases in question. At that time, Mr. Schechter predicted a closing date of sixty days for three of the subject cases (*Ace Store Fixtures, Ducharme,* and *Robinson*).   He also represented that the trustee's final report for *Melvin Edward Colby* was then being prepared (we infer from this that the case was then ready to be closed), and that the cases *Jeanne W. White* and *Earl H. White, Jr.* would require an additional six months to administer and close.

5.   Notwithstanding these assurances, Mr. Schechter failed to close any of the cases until another three years later, and even then, his performance was accomplished only through the constant attention and prodding of the Bankruptcy Court Clerk's Office.

6.   The problems cited by the trustee in June, 1980 as reasons for his failure to close these cases appeared to be the result of his own procrastination and/or lack of attention.   For example:

a.   In *Ace Store Fixtures,* the trustee reported that because the file was misplaced, he would have to reconstruct the facts.

b.   In *Ducharme,* a 1974 vehicle was sold (without prior Court approval) by an automobile dealer who refused to release to the trustee the $600 proceeds from the sale. The automobile in question had been stored on the dealer's lot from March, 1978 to October 19, 1979 (a period of more than 18 months) during which time no sale occurred because the trustee had not obtained Court

---

sation to the trustee.   As a general practice, Chapter 7 and 13 fee applications are handled summarily, with very few involving written opinions.   *See In re Botelho,* 8 B.R. 305, 7 B.C.D. 221, 3 C.B.C.2d 739 (Bkrtcy. 1st Cir.1981) and Fed.R.Civ.P. 52(a): "Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rule 41(b)."

2.   We think it appropriate here to take judicial notice of Mr. Schechter's overall performance as trustee.   *See Woodmar Realty Co. v. McLean (In re Woodmar Realty Co.),* 294 F.2d 785, 788 (7th Cir.1961) ("it is elementary that the court below was duty bound to take judicial notice of its records and files in this cause"), *cert. denied,* 369 U.S. 803, 82 S.Ct. 643, 7 L.Ed.2d 550 (1962); *Rovzar v. Chemical Sales & Service Co. (In re Saco Local Development Corp.),* 30 B.R. 862 (Bkrtcy.D.Me.1983).   During 1977–1978, Mr. Schechter was appointed trustee in approximately fifty cases, and although he was tardy in closing a substantial number of these cases, compensation was allowed notwithstanding his

delay.   It is primarily because these captioned remaining cases illustrate such extreme and unjustified delay, without reasonable cause, that this Court ultimately refused to award any compensation, finding that to do otherwise would be to reward what was essentially a breach of duty by the trustee both to the Court and to creditors.

3.   Under the Bankruptcy Act, the Court was required to submit semi-annual reports (on Form BK–47) to the Administrative Office of the United States Courts, Bankruptcy Division, and to the Chief Judge of the United States District Court.   Form BK–47 required the Bankruptcy Judge to provide "a list of cases, other than Chapter XIII cases, which have remained open for more than eighteen months, with the reason in each instance why the case has not been closed."   *Manual for Bankruptcy Judges: Administrative Procedures and Regulations* § 705.-01 (January 1978).   Any case which remained open more than eighteen months and which presented no problems requiring litigation, was generally considered to be delinquent in status.

approval for the sale nor provided marketable title to the dealer. Ultimately, the dealer, frustrated by the trustee's inaction, obtained a duplicate title from the registry, sold the vehicle, and applied the proceeds from the sale as payment of his storage charge. It was not until March, 1983 that the trustee recovered the proceeds, and put the case in order to be closed.

c. *Robinson* remained open because the trustee failed to obtain an appraisal of the debtor's property.

d. The trustee's account in *Colby* was filed in August, 1980, but the final meeting of creditors was delayed for three years due to the trustee's failure to obtain a creditor's stipulation withdrawing a secured claim.

e. In the *White* cases, there was a problem first involving "stale" and later "misplaced" checks of state and federal tax returns amounting to $900.

7. Beginning in December, 1980 and thereafter at no more than two-month intervals, the Clerk's Office repeatedly contacted Mr. Schechter in unsuccessful efforts to have him close these cases. There is a record of dozens of telephone communications between the Deputy Clerk and Mr. Schechter, in addition to the mailing of numerous notes and letters to him. The Deputy Clerk was also in constant communication by telephone and in person, urging Mr. Schechter to complete his work on these cases. Mr. Schechter repeatedly promised speedy resolution, with representations that the reports for these cases were on tape but his secretary had not gotten to them yet.[4]

8. Eventually, in November, 1981, and because of the Court's frustration in its inability to obtain the action necessary to close these cases, the Clerk of the Bankruptcy Court suggested to Mr. Schechter that he resign as trustee. He declined to do so, however, and emphasized his determination to see these cases through to conclusion. It is significant, in view of his insistence in 1981 to complete his trustee duties, that by 1983, Mr. Schechter still had made little or no progress toward solving the minor problems of three years earlier (*see* paragraph 6 herein), which were allegedly preventing the closing of these cases.

9. Finally, and only with the assistance and constant pressure of the Office of the Clerk of the Bankruptcy Court, the cases in question appeared to be in order for a scheduled final meeting of creditors.[5]

10. On November 14, 1983, notice was mailed to Mr. Schechter of a final meeting of creditors in these cases to be held on December 1, 1983. He was present at the scheduled hearing and was at that time given the opportunity to discuss the above captioned cases.

11. At the conclusion of the December 1, 1983 hearing, the Court offered Mr. Schechter the opportunity to explain the delay in closing these 1977 and 1978 cases.

THE COURT: ..... Is there any general statement you want to make on the reason we are here on these 1977 cases? They've been a source of constant irritation to the Clerk's Office and eventually to me. So, I just wanted to give you a chance to say whatever you would like.

MR. SCHECHTER: If I would like to say anything, it was more my tardiness. I would not be stating that; that's true,

4. On December 31, 1982, the Deputy Clerk received a letter from Mr. Schechter's secretary requesting advice "as to what final papers must be filed" in the cases of *Robinson, Colby,* and *White.* This letter appears to belie Mr. Schechter's assurance that the final reports were "on tape" in 1980.

5. In addition to the above-captioned cases, another 1977 case handled by Mr. Schechter was scheduled for a final meeting on the December 1, 1983 hearing date. In that case, *In re Fransosi,* BK No. 77–261, Mr. Schechter has yet to resolve an objection to a claim and, as a result, the case, which is more than five years old, remains open to date. We mention the *Fransosi* matter to highlight the continuing saga of Mr. Schechter's recalcitrant approach to the performance of his duties as trustee.

and that's really the only comment that I can make.

Transcript at 9.

## CONCLUSION

Although, to be sure, there have been other cases handled by other trustees that have taken longer than necessary to administer, our experience with these cases and with this trustee is unique. These Old Act cases have been pending for more than five years, without reasonable cause shown why they were not closed long ago, or to justify their remaining open until December, 1983. The trustee's extreme, unjustified, and dilatory conduct in handling these cases has impinged on the rights of creditors, and the administrative function of the Court, as well. In light of what we may only describe as unprecedented delay, and the trustee's demonstrated lack of candor in his dealings with the Office of the Clerk of the Bankruptcy Court during most of the time that these cases have been pending, this Court determined that it was appropriate to deny compensation.