**In re Clifford W. RUSTIA a/k/a Clifford W. Rustia, Sr. and Eileen Rustia, Debtors.**

**Bankruptcy No. 81 B 20671.**

**Adv. No. 82 ADV 6042.**

United States Bankruptcy Court, S. D. New York.

May 18, 1982.

---

Sidney Turner, White Plains, N. Y., Trustee.

Michael H. Ganz, Hicksville, N. Y., for Manufacturers Hanover Trust Co.

DECISION ON COMPLAINT SEEKING RECOVERY OF PAYMENTS MADE TO MANUFACTURERS HANOVER TRUST COMPANY

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The trustee in bankruptcy seeks to recover six payments made by these Chapter 7

debtors to the defendant, Manufacturers Hanover Trust Company, under their Mastercharge and Visa accounts on the theory that since they were made within ninety days before the filing of the Chapter 7 petition they are recoverable as voidable preferences under Code § 547.

The defendant denies the preferential receipt of the funds in question, totalling $582.00, and asserts that they are excepted from preferential status because:

(A) The payments were a contemporaneous exchange for new value, as permitted under 11 U.S.C. § 547(c)(1).

(B) The payments were made in the ordinary course of business and within 45 days after the debts were incurred as described under 11 U.S.C. § 547(c)(2).

(C) The defendant gave new value within the meaning of 11 U.S.C. § 547(c)(4) in that the payments should be netted out against purchases made by the debtors during the 90 day period.

The facts are not disputed. The debtors filed their joint petition for relief under Chapter 7 of the Bankruptcy Code on November 18, 1981. Such filing constituted an order for relief in accordance with 11 U.S.C. § 301. Within the 90 days immediately preceding November 18, 1981, the debtors made three payments to the defendant under their Master charge account as follows: $83.00 on September 9, 1981; $81.00 on September 15, 1981 and $88.00 on October 30, 1981. They also charged against their account a $250 transaction on September 15, 1981. Immediately before these payments were made the balance due to the defendant, as reflected on its statement dated September 3, 1981 was $1907.09. Within the same 90 day period the debtors also made three payments to the defendant under their Visa account as follows: $163.00 on September 9, 1981; $83.00 on September 15, 1981 and $84.00 on October 30, 1981. They also charged against their account a $225.00 transaction on September 17, 1981. The balance due to the defendant, as reflected on its statement dated September 3, 1981 was $2019.27.

The retail installment credit agreement pursuant to which the charge cards were issued makes mention of an available credit line. In this particular situation, the debtors were entitled to have outstanding at any time a combination of purchases and cash advances totalling $2000 on either the Master charge or the Visa card, for a combined total of $4000. When a purchase or cash advance is made, the credit is used and is subtracted from the line of available credit. When a payment is received the credit line is replenished to the extent of the payment.

## INSOLVENCY

The defendant concedes that three of the five requisites for establishing a preference under 11 U.S.C. § 547(b) exist in that there was a transfer of property of the debtors to a creditor within 90 days before the filing of the petition which would enable the creditor to receive more than it would receive under the distributive provisions of Chapter 7 of the Bankruptcy Code. The defendant maintains that insolvency was not established and that the payments made were a contemporaneous exchange for new value, and therefore not for an antecedent debt. This contemporaneous exchange argument is also relied upon as one of three exceptions asserted in the defendant's answer.

Although the burden of persuasion remains with the trustee, he is now armed with a mighty weapon in that 11 U.S.C. § 547(f) creates a presumption of insolvency for the 90 days preceding the filing of the petition for relief. This presumption requires the party against whom the presumption exists to come forward with some evidence to rebut it. The defendant has not offered any evidence in rebuttal. Instead the defendant argues that the debtors' use of a credit card in the 90 day period during which they are presumed insolvent is tantamount to fraud and that this court should not indulge in the presumption that the defendants acted fraudulently. Hence, if the debtors did not act fraudulently it must follow that they were solvent during the 90 day period.

This syllogism is so convoluted and meritless that the court will not tarry with it other than to repeat that there was no evidence to rebut the presumption of insolvency. See, *In re Belize Airway, Ltd.*, 18 B.R. 485, 490 (Bkrtcy.S.D.Fla.1982).

## ANTECEDENT DEBT OR CONTEMPORANEOUS EXCHANGE FOR NEW VALUE

■ The debtors' Mastercharge balance owed to the defendant at the commencement of the 90 day period was $1907.09. Their Visa balance at that time was $2019.27. The three payments made during that period towards their Mastercharge account and the three payments made towards their Visa account were not shown to relate to any specific purchase or charge and therefore must be regarded as on account payments towards the debtors' then outstanding obligations under these two accounts. Hence, they were in payment of antecedent debts.

The defendant argues that the payments resulted in new credit made available to the debtors so as to reinstate their $2000 line of credit in each account. Thus, when a payment was received the line of credit in the amount of the payment was released and simultaneously the debtors were given the right to make new charges to the extent of the payment received. Therefore, the defendant reasons that the payments were intended to be a contemporaneous exchange for new value given to the debtors within the exception expressed in 11 U.S.C. § 547(c)(1). The term "new value" is defined in 11 U.S.C. § 547(a)(2) as follows:

"(2) "new value" means money or money's worth in goods, services, *or new credit*, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, *but does not include an obligation substituted for an existing obligation*;" (Emphasis added)

Under the Mastercharge and Visa accounts the debtors were entitled to a $2000 line of credit for each account when the credit card agreements became effective. The defendant correctly observes that when a payment is received from the debtors credit is made available to them in accordance with their original line of credit. However, the availability of a line of credit to the debtors is not the correlative of an indebtedness owed by them to the extent of that credit line. Until the debtors actually avail themselves of that credit line by purchases or cash advances no new credit is extended. The availability of credit is not synonymous with the extension of credit; the estate is not augmented by the fact that the debtors' payments resulted in restoring their line of credit to the extent of the payments. Nothing of additional value was received that could be regarded as enhancing this estate so as to offset the payments that were made. See *In re Duffy*, 3 B.R. 263, 6 B.C.D. 88, 1 C.B.C.2d 41 (Bkrtcy. S.D.N.Y.1980). In other words, the availability of additional credit by reason of the payments in question is no economic solace to the creditors of this estate. Indeed, the defendants' obligation to make available to the debtors a $2000 line of credit for each account which was granted when the credit card contracts became effective, was reinstituted by the substitution of available credit each time the debtors made a payment towards their account. An obligation substituted for an existing obligation is expressly excluded from the definition of new value in 11 U.S.C. § 547(a)(2). Absent the grant of new value, the contemporaneous exchange defense must fail.

## PAYMENTS IN THE ORDINARY COURSE OF BUSINESS

■ The defendant also claims that the debtors' payments were made in the ordinary course of the business or financial affairs of the debtors and the defendant not later than 45 days after the debts were incurred as excepted under 11 U.S.C. § 547(c)(2). The key to this defense is the 45 day period after the incurring of debts to which the payments relate. The payments in question were simply on account payments. There was no proof that they relat-

ed to any specific debt. For example, the September 9 and 15, 1981 payments made on the Master charge and Visa accounts were made on account of an outstanding indebtedness of $1907.09 and $2019.27, respectively, as reflected on the September 3 statements. The October 30 payments were made on account of an outstanding indebtedness of $2023.13 and $2024.96 on the Master charge and Visa accounts, respectively, as reflected on the October 5 statements. It is not possible to determine whether a particular payment was specifically related to a particular transaction in order to sustain an argument for the 45 day exception under § 547(c)(2). Since none of the payments was earmarked towards any specific transaction, they must be applied generally against the total outstanding balance owed by the debtors on the two accounts. For the purpose of determining the amount of an indebtedness owed under a retail installment credit agreement, payments should be applied first to service charges and then to debts in the order in which incurred, i.e., the earliest first. See *New York Personal Property Law* § 413(3)(e). See also *In re Williams*, 5 B.R. 706, 6 B.C.D. 930, 2 C.B.C.2d 1216 (Bkrtcy. S.D.Ohio 1980). The ordinary course of business defense must fail because the 45 day rule was not satisfied.

## SUBSEQUENT NEW VALUE

The defendant notes that during the 90 day period immediately before the filing of the petition for relief the debtors made payments under the Master charge and Visa accounts totalling $582.00 as contrasted with new charges totalling $475.00. By netting out these figures the defendant comes up with the sum of $107.00 which it believes is the maximum recoverable preference. This position is apparently based upon the fourth exception to a preference, which is expressed in 11 U.S.C. § 547(c)(4) as follows:

"§ 547. Preferences.

. . . . .

(c) The trustee may not avoid under this section a transfer—

. . . . .

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor;"

■ The defendant quotes from the legislative history dealing with this section which states:

"The fourth exception codifies the net result rule in section 60c of current law. If the creditor and the debtor have more than one exchange during the 90-day period, the exchanges are netted out according to the formula in paragraph (4). Any net value that the creditor advances must be unsecured in order for it to qualify under this exception."

H.R.No.95–595, 95th Cong., 1st Sess., 374 (1974); S.R.No.95–989, 95th Cong. 2nd Sess. 88 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6330. However, the "formula in paragraph (4)" is not consistent with defendant's view, which applies the net result rule *to the entire 90 day preference period as a whole*. Under paragraph (4) new value must be given by the creditor "after such transfer". Thus, only preferential transfers made by the debtor before the new value was given may be netted out against the subsequent new value. However, preferential payments following receipt of new value are not netted against the new value. Thus, the net result rule does not apply to the 90 day preference period as a whole; each transfer must be examined independently to determine whether or not the creditor later replenished the estate. *In re Blair C. Bishop*, 17 B.R. 180, 8 B.C.D. 852, 855–856 (Bkrtcy. N.D.Ga.1982.)

■ This point was expalined in 2 *Norton Bankruptcy Law and Practice*, Part 32— Page 58 as follows:

"Code § 547(c)(4) has its most frequent application in revolving credit relationships. In this context, it is often confused with the so-called 'net result rule,' an analytical approach that considers all payments and extensions of credit received during the period applicable to preference law and permits recovery of only the net gain received by the creditor. This rule was applied in cases at the beginning of the 20th century, but is of doubtful current validity. In contrast to the 'net result' test, the subsequent advance rule protects preferential transfers only to the extent that subsequent advances are made."

This court has already determined that the renewed availability of a line of credit to the extent of payments made on account of an existing debt cannot be considered as the extension of new credit. New credit is extended only when the debtors actually use the credit line by making purchases or receiving cash advances, since the value of the item purchased or the cash obtained augment the estate for the purposes of distribution to creditors.

Thus, the debtors were extended new credit only twice in the 90 day period prior to filing their petition: on September 15, 1981 when a cash advance of $250 was received through their Mastercharge account, and on September 17, 1981 when another cash advance for $225 was received through their Visa account.

Therefore, in light of these two occasions when new credit was extended, and in accordance with the formula expressed in 11 U.S.C. § 547(c)(4), the Mastercharge payments of $83.00 and $81.00 on September 9 and September 15, 1981 respectively, may be netted against the subsequent new charge of $250 on September 15, 1981, with the result that they will be entirely insulated from attack as preferential payments. The payment of $88.00 on October 30, 1981, which was made after the $250 new value credit, will not be netted and is therefore preferential. Similarly, the Visa payments of $163.00 and $83.00 on September 9 and 15, 1981 respectively, will be netted against the subsequent new value of $225.00 on September 17, 1981, with the result that only $21.00 will be regarded as preferentially paid. The subsequent payment of $84.00 on October 30, 1981 will also be regarded as a preference.

Accordingly, the trustee may recapture a total of $193 ($88.00 from Master charge and $21.00 and $84.00 from Visa) as falling outside the exception under 11 U.S.C. § 547(c)(4).

## CONCLUSIONS OF LAW

1. The trustee has established that the debtors' payments to the defendant, Manufacturers Hanover Trust Company, that were applied to Master charge and Visa accounts were on account of antecedent debts owed by the debtors before such payments were made and that they were made within 90 days before the date of the filing of their joint petition under Chapter 7 of the Bankruptcy Code, so as to enable the defendant to receive more than it would have received under the distributive provisions under Chapter 7 of the Code, as described in 11 U.S.C. § 547(b).

2. The payments in question were not intended to be a contemporaneous exchange for new value given to the debtor, as excepted under 11 U.S.C. § 547(c)(1), since the availability of credit from a line of credit previously agreed upon did not constitute new value.

3. There was no proof that the payments were made within 45 days after any specific debt was incurred, as excepted under 11 U.S.C. § 547(c)(2).

4. Four payments to the defendant to the extent of $389.00 are excepted under 11 U.S.C. § 547(c)(4) in that after such payments the defendant gave new value to the debtors that was unsecured and on account of which the debtors did not make an otherwise unavoidable transfer to the defendant.

5. The trustee in bankruptcy is entitled to recover from the defendant the sum of $193.00 as an avoidable preference proscribed under 11 U.S.C. § 547(b), for which the defendant is not entitled to any exception under 11 U.S.C. § 547(c).

SUBMIT ORDER on notice.