In re SACO LOCAL DEVELOPMENT CORP. Leather Comfort Corporation Kirstein Leather Co. d/b/a Saco Tanning Corp. Kirstein Split Corporation, Debtors.

Roderick R. ROVZAR, Trustee, Plaintiff,

v.

PRIME LEATHER FINISHES CO., Defendant.

Bankruptcy Nos. 281–00151 to 281–00154. Adv. No. 281–0228.

United States Bankruptcy Court, D. Maine.

April 18, 1983.

Gregory Tselikis, Charles Miller, Bernstein, Shur, Sawyer & Nelson, Portland, Me., for plaintiff.

Ellsworth Rundlett, III, Childs, Emerson, Rundlett, Portland, Me., for defendant.

## MEMORANDUM DECISION

FREDERICK A. JOHNSON, Bankruptcy Judge.

In this proceeding the chapter 7 trustee seeks to recover, as avoidable preferences, payments totalling $123,407.52 made by the debtor[1] to Prime Leather Finishes Co. (Prime) within 90 days before the date of the filing of the debtor's petition. The debtor filed for relief under chapter 11 of the Code on March 26, 1981. The case was converted to chapter 7 on May 20, 1981, and the trustee was appointed.

It is not seriously disputed that the payments were avoidable transfers within the meaning and intent of section 547(b) of the Code. 11 U.S.C. § 547(b).[2]

Prime argues, however, that it qualifies for the exceptions to avoidability provided for in subsections (1), (2), and (4) of section 547(c).[3] The court concludes that Prime does qualify, in part, for new value given to the debtor under section 547(c)(4).

## DISCUSSION

Prime asserts that it is entitled to the contemporaneous exchange exception outlined by section 547(c)(1). Prime's president testified that it would not ship additional goods to the debtor on credit unless the debtor paid for previously shipped goods within 60 days of shipment. Prime argues

---

1. All references to the debtor mean Saco Tanning Division of Kirstein Leather Company.

2. Section 547(b) provides, as pertinent:
   (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—
   (1) to or for the benefit of a creditor;
   (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
   (3) made while the debtor was insolvent;
   (4) made—
   (A) on or within 90 days before the date of the filing of the petition; . . .
   (5) that enables such creditor to receive more than such creditor would receive if—
   (A) the case were a case under chapter 7 of this title;
   (B) the transfer had not been made; and
   (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

3. Section 547(c) provides as pertinent:
   The trustee may not avoid under this section a transfer—
   (1) to the extent that such transfer was—

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
(B) in fact a substantially contemporaneous exchange;
(2) to the extent that such transfer was—
(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;
(B) made not later than 45 days after such debt was incurred;
(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
(D) made according to ordinary business terms;

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—
(A) not secured by an otherwise unavoidable security interest; and
(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.

that the transfers that the trustee seeks to avoid were contemporaneous exchanges for Prime's agreement to ship additional goods on credit.

■ In order to qualify for the section 547(c)(1) exception, the creditor must show that the debtor and creditor intended the transfers to be contemporaneous exchanges for new value given to the debtor and that they were in fact substantially contemporaneous exchanges. There is no evidence in the record from which the court could conclude that the transfers were intended by the debtor to be contemporaneous exchanges for Prime's agreement to ship additional goods on credit. Moreover, it is clear from evidence submitted by the trustee that the transfers were not "in fact substantially contemporaneous exchanges"; the transfers were in payment of the existing obligations for the goods shipped in the months of September, October, and November of 1980.

Prime next argues that section 547(c)(2) bars the trustee from recovering the otherwise preferential transfers. Prime argues that, because it maintained a policy requiring the debtor to keep its account current within 60 days, the debtor did not incur the debts with Prime until 60 days after the goods were shipped when Prime would demand payment.

■ In order to apply section 547(c)(2) all four elements must be established. *In re McCormick,* 5 B.R. 726, 6 B.C.D. 889, 2 C.B.C.2d 1145 (Bkrtcy.N.D.Ohio 1980). Section 547(c)(2)(B) requires that the transfer be made not later than 45 days after the debt was incurred. Debts are incurred when services are rendered or when a debtor obtains a property interest in goods, not when an invoice is sent. *Barash v. Public Finance Corp.,* 658 F.2d 504, 509, 510 (7th

Cir.1981); *Rovzar v. Biddeford & Saco Bus Garage, Inc. (In re Saco Local Development Corp.),* 25 B.R. 876 (Bkrtcy.D.Me.1982). "Congress, in enacting section 547(c), set out objective criteria for establishing qualifications for the exceptions." *Rovzar v. Diamond International (In re Saco Local Development Corp.),* 25 B.R. 880, 882 (Bkrtcy.D.Me.1982).

■ In this proceeding, the debts were incurred when Prime delivered the goods to the debtor's trucks at the place of shipment. Each transfer was made more than 45 days after each debt was incurred, and therefore, section 547(c)(2) is not applicable to this case.

Finally, Prime argues that under the net result rule[4] it is entitled to set off the amount of new value it extended to the debtor during the preference period against the amount of the preferential transfers recoverable by the trustee. Prime contends, therefore, that the $123,407.52 of preferential transfers may be completely set off by the $151,811.14 in new value it extended to the debtor within the 90-day period before the debtor filed its petition.

■ The net result rule has no application under the Bankruptcy Code. *In re Bishop,* 17 B.R. 180, 8 B.C.D. 852, 5 C.B.C.2d 1515 (Bkrtcy.N.D.Ga.1982). By enacting section 547(c)(4) Congress eliminated the net result rule. *In re Thomas W. Garland, Inc.,* 19 B.R. 920, 926, 8 B.C.D. 1357, 1360, 6 C.B.C.2d 1259, 1266 (Bkrtcy.E.D.Mo.1982). Section 547(c)(4) establishes a subsequent advance rule whereby a preferential transfer is insulated from a trustee's avoiding powers to the extent that a creditor extends new value, which is unsecured and remains unpaid, to a debtor *after* the preferential transfer. The subsequent advance rule

---

4. The judicially created net result rule provided that:

When, for goods sold and delivered, payments are made on a running or open account between the parties in the regular course of business within the 90-day period, without the knowledge on the part of the creditor of the debtor's insolvency, and the net result of these transactions is to enrich the debtor's estate by the total sales, less the total payments, such payments or transfers are not preferential, even though no corresponding goods are exchanged for the payments made within 90 days before bankruptcy.

4 *Collier on Bankruptcy* para. 547.40, at 547–125 to –126 (15th ed. 1982) (footnotes omitted).

does not apply to the 90-day preference period as a whole, rather "each transfer must be examined independently to determine whether or not the creditor later replenished the estate." *In re Rustia,* 20 B.R. 131, 135, 9 B.C.D. 6, 8, 6 C.B.C.2d 917, 921 (Bkrtcy.S.D.N.Y.1982).

For the purpose of applying section 547(c)(4) in this proceeding, the transfers and extensions of new value are discussed below.

█ The first preferential transfer with which we are concerned occurred on January 19, 1981, when Prime received a check in the amount of $29,583.60 in payment for goods shipped during September of 1980.[5] Prime is entitled to credit for new value given (goods shipped) on January 21, 23, and 28, 1981, with a value of $39,095.45. This transfer is, therefore, excepted from the trustee's avoidance powers under section 547(c)(4) because "after such transfer" Prime "gave new value to . . . the debtor." 11 U.S.C. § 547(c)(4).

The same rule applies to checks received by Prime on February 2 and 17, 1981.

█ On February 27, 1981 Prime received checks totalling $31,077.91 and shipped goods to the debtor on March 2 and 6 with a value of $27,129.65. Applying the rule of section 547(c)(4) all but $3,948.26 of the February 27 preferential transfers are excepted from avoidance.

█ On March 12, 1981 Prime received checks totalling $30,885.04 and on March 20, 1981 Prime delivered goods having a value of $10,239.58. Prime is entitled to credit for this new value, leaving $20,645.46 avoidable by the trustee of this $30,885.04 transfer.

In summary, of the $123,407.52 in preferential transfers, Prime is entitled to exempt all but $24,593.72 from avoidability for new value given to the debtor after such transfers.

█ Prime also argues that services it provided to the debtor must be considered when applying section 547(c)(4). Prime maintained a technical demonstrator leather finisher at the debtor's place of business for the purpose of providing the debtor with technical assistance on its production line. The court agrees that services may be considered new value which may be set off against a previous preferential transfer. 11 U.S.C. § 547(a)(2). Prime, however, has offered no evidence that the presence of the technical demonstrator was anything more than a gratuity offered to facilitate the sales of its products. No evidence was introduced that suggests the debtor contracted for the services. It is impossible to assign a value to these services in computing the net preference under section 547(c)(4).

Judgment will be entered for the plaintiff trustee for the net preference in the amount of $24,593.72.

An appropriate order will be entered.

---

5. The date of delivery of a check is the critical date for the purpose of determining the date of a transfer when applying the section 547(c)(4) exception. *Rovzar v. Commonwealth Labora-* *tories, Inc. (In re Saco Local Development Corp.),* Adv. 281–0226 (Bkrtcy.D.Me. Dec. 28, 1982).