## In re CHEMICAL SEPARATIONS CORPORATION, Debtor.

## CHEMICAL SEPARATIONS CORPORATION, Plaintiff,

v.

## J.L. IRONS, d/b/a Alloy Fabrications, Co., Defendant.

### Bankruptcy No. 3-82-01569.
### Adv. No. 3-83-0531.

United States Bankruptcy Court, E.D. Tennessee.

Jan. 18, 1984.

John A. Walker, Jr., Mary C. Walker, Knoxville, Tenn., for plaintiff.

Richard E. Faires, Knoxville, Tenn., for defendant.

CLIVE W. BARE, Bankruptcy Judge.

The debtor in possession seeks to avoid two prepetition transfers to defendant pursuant to 11 U.S.C.A. § 547(b) (1979). Defendant contends that subsequent to the alleged preferential transfers it gave to the debtor new value not secured by an otherwise unavoidable security interest and on account of which the debtor did not make an otherwise unavoidable transfer to defendant. 11 U.S.C.A. § 547(c)(4) (1979). Defendant maintains the subsequent new value exceeds the sum of the challenged transfers and that the debtor in possession is not entitled to any recovery.

I

The material facts are generally undisputed, Chemical Separations Corporation (Chem Seps) is a manufacturer of waste and water treatment systems. Defendant performed fabrication work for Chem Seps between August 1981 and October 15, 1982. Chem Seps gave its check, dated July 16, 1982, in the amount of $45,872.90 to James L. Irons for work invoiced by defendant during April 1982. This check was deposited by defendant on July 22, 1982, and paid by the drawee bank on the next day, July 23, 1982. Another Chem Seps check, dated August 17, 1982, for the amount of $19,134.34 was tendered to satisfy invoices issued by defendant during May 1982. This second check was paid by the drawee bank on August 24, 1982. Carl Hazen, president and chief executive officer of Chem Seps since April 1982, selected the invoices paid by the two checks in question. Hazen knew

---

defendant could not continue work on Chem Seps projects without payment. Monies received through negotiation of the two Chem Seps checks were used to pay defendant's vendors. Between July 17 and October 15, 1982, defendant submitted invoices totaling $75,609.00 for work performed for Chem Seps. These invoices were unpaid when Chem Seps filed its chapter 11 petition on October 15, 1982.

## II

Section 547(b) of Title 11 of the United States Code enacts in relevant part:

> Except as provided in subsection (c) of this section, the trustee [or a debtor in possession[1]] may avoid any transfer of property of the debtor—
>
> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3) made while the debtor was insolvent;
>
> (4) made—
>
> (A) on or within 90 days before the date of the filing of the petition; ... and
>
> (5) that enables such creditor to receive more than such creditor would receive if—
>
> (A) the case were a case under chapter 7 of this title;
>
> (B) the transfer had not been made; and
>
> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

The proof adduced at trial establishes all of the elements of a preferential transfer with respect to both checks in question.[2] The real issue is whether the defendant is excused from returning the two preferential payments to the debtor's estate by virtue of Code § 547(c)(4), which recites:

> The trustee [or debtor in possession] may not avoid under this section a transfer—
>
> .   .   .   .   .
>
> (4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—
>
> (A) not secured by an otherwise unavoidable security interest; and
>
> (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor ...

Known as the "subsequent advance rule," this exception to Code § 547(b) supplants the judicially-created "net result rule."[3] *In re Fulghum Constr. Corp.*, 706 F.2d 171 (6th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 342, 78 L.Ed.2d 310 (1983). In explaining the exception the editors of *Collier on Bankruptcy* state:

> To "the extent that" the transferee gives "new value to or for the benefit of the debtor" on an unsecured basis after receiving a preferential transfer, the preference will not be voidable. "In other words, even though a creditor has received a preference ..., he may still offset [against a preference claim] any subsequent unsecured credit which he extended to the debtor." The debt may be unsecured as an initial matter or may be secured by an avoidable security interest. (Footnotes omitted.)

---

1. With the exception of the right to compensation a debtor in possession is vested with the same rights as a trustee. 11 U.S.C.A. § 1107(a) (1979).

2. Although initially contending that the July 16, 1982, check represents a transfer occurring more than 90 days prior to the petition date, defendant has conceded that the transfer did not occur until the check was paid on July 23, 1982, a date clearly within the 90-day preference period. See *Nicholson v. First Inv. Co.,* 705 F.2d 410 (11th Cir.1983) (effective date of transfer is date check is honored by paying bank in action to determine whether voidable preference has occured).

3. Essentially, the "net result rule" provides that no preference occurs if during the preference period a debtor and creditor engage in a series of exchanges or transactions which when netted do not effect a diminution in the value of the debtor's estate.

Section 547(c)(4) substantially restates former Section 60c of the prior law. Nevertheless, Section 547(c)(4) is not, as may be suggested, a codification of the so-called "net result" rule of prior law. 4 *Collier on Bankruptcy* ¶ 547.40[1] (15th ed. 1983).

*Gold Coast Seed Co. v. Spokane Seed Co.,* 30 B.R. 551 (Bkrtcy. 9th Cir.1983) illustrates the application of the subsequent advance rule. On March 31, 1980, Gold Coast Seed Co. issued and mailed its check for $62,-920.00 in payment of its trade debt to Spokane Seed Co. This check was received on April 2, 1980, and promptly deposited. After receipt of the check, but prior to payment thereon, Spokane Seed Co. advanced new credit totaling $54,340.00 to Gold Coast Seed Co. On June 30, 1980, Gold Coast Seed Co. filed a chapter 11 petition. The bankruptcy appellate panel concurred in the trial court's determination that the $62,-920.00 payment constituted a preference. However, holding that the transfer occurred on the date of receipt of the check for the purpose of offsetting credit for new value under Code § 547(c)(4), the panel reversed the trial court's disallowance of a setoff of $54,340.00 against the preference.

The purpose of § 547(c)(4) is precisely to encourage trade creditors to continue dealing with troubled businesses. If this judgment were affirmed, the result would be to discourage merchants from extending new credit in reliance upon the receipt of payment of antecedant [sic] debts in the form of checks until such checks have cleared the bank. Under this analysis, the determination of the time of "transfer" for the purposes of § 547(c)(4) is independent from determination of the time of "transfer" for the purposes of inclusion within the 90 day period. *In re Gold Coast Seed Co.,* 30 B.R. at 553.[4]

Although the $45,872.90 check is dated July 16, 1982, Hazen testified that he did not necessarily sign the check on that date. However, the check was delivered to defendant at the Chem Seps business premises, presumably on July 16, 1982. The court adopts that date as the date of transfer for the purpose of offsetting credit for new value under Code § 547(c)(4). *Gold Coast Seed Co. v. Spokane Seed Co.,* 30 B.R. 551, 553 (Bkrtcy. 9th Cir.1983); *Thomas W. Garland, Inc. v. Union Elec. Co.,* 19 B.R. 920, 928 (Bkrtcy.E.D.Mo.1982).[5]

Exhibit 2, defendant's letter of October 7, 1982, to Chem Seps, includes a list of outstanding purchase orders for which defendant requested payment. At trial counsel for Chem Seps stipulated that during the 90-day period preceding his client's bankruptcy filing defendant performed work on Chem Seps purchase orders and submitted invoices totaling $75,609.00. Although the stipulation did not include an acknowledgment of indebtedness, based on Hazen's testimony the court finds that the defendant clearly extended "new value"[6] to Chem Seps subsequent to the delivery of the July 16, 1982, Chem Seps check for $45,872.90. Accepting the shipping date, as opposed to either the purchase order or invoice date, as the date on which Chem Seps incurred liability,[7] defendant gave unsecured new value

---

4. Other cases illustrating the subsequent advance rule are *Rovzar v. Prime Leather Finishes (In re Saco Local Dev. Corp.),* 30 B.R. 859 (Bkrtcy.D.Me.1983); *In re Rustia,* 20 B.R. 131 (Bkrtcy.S.D.N.Y.1982); *Thomas W. Garland, Inc. v. Union Elec. Co.,* 19 B.R. 920 (Bkrtcy.E.D. Mo.1982); *Pettigrew v. Trust Co. Bank (In re Bishop),* 17 B.R. 180 (Bkrtcy.N.D.Ga.1982).

5. The two checks in question herein were both honored within less than ten days from the respective dates of delivery to the defendant.

6. "New value," as statutorily defined, includes money's worth in either goods or services. 11 U.S.C.A. § 547(a)(2) (1979).

7. New value was given by the defendant on the dates Chem Seps became obligated to pay. Clearly, new value was not given on the purchase order date because no performance by defendant had occured. In discussing the date on which a debt is incurred for the purposes of the ordinary course of business exception to avoidability created by Code § 547(c)(2), *Collier* states:

The determination of when a debt is actually "incurred" is critical. One view is that the debt is not incurred until an invoice is sent or demand for payment is made. The probably better view is that the debt is incurred whenever the debtor obtains a property interest in the consideration exchanged giving rise to

to Chem Seps totaling $4,182.83 after July 16th and before August 17, 1982. Subsequent to the August 17, 1982, payment of $19,134.34 defendant gave additional, unsecured new value to Chem Seps totaling $50,246.94. In accordance with Code § 547(c)(4) defendant is entitled to offset $54,429.77 against the two preferential payments totaling $65,007.24.[8] Hence, Chem Seps may recover $10,577.47, plus costs, from defendant.[9]

This Memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 7052.

---

the debt. Thus if goods are identified for shipment, unless the special agreement otherwise provides, the debtor has a special property interest and the debt is "incurred". 4 *Collier on Bankruptcy* § 547.38 (15th ed. 1983). Although the Chem Seps purchase orders in the record include a payment term "net 30 days," the obligation of Chem Seps to pay arose as of the dates of shipment. See *Matter of Emerald Oil Co.*, 695 F.2d 833 (5th Cir.1983) (debt incurred when debtor becomes obligated to pay, not when creditor chooses to invoice debtor, for the purposes of exception to avoidability created by Code § 547(c)(2)).

8. Exhibit 2 also reflects that, as of October 7, 1982, the defendant was holding work on certain Chem Seps purchase orders totaling $36,860.26. Presumably the items held were never delivered to Chem Seps, since there is no proof of delivery in the record.

9. Plaintiff's request for pre-judgment interest is denied since defendant is entitled to a sizeable offset, the amount of which was heretofore undetermined. See Tenn.Code Ann. § 47–14–123 (1979).