39 B.R. 645 (1984)
In the Matter of ISIS FOODS, INC., Bankrupt.
VALLEY CANDLE MFG. CO., INC., Appellant,
v.
John R. STONITSCH, Appellee.
No. 84-0101-CV-W-1.
United States District Court, W.D. Missouri, W.D.
March 30, 1984.
*646 Russell S. Jones, Kansas City, Mo., for appellant.
Jonathan A. Margolies, Kansas City, Mo., for appellee.

MEMORANDUM OPINION AND ORDERS
JOHN W. OLIVER, Senior District Judge.

I.
This bankruptcy appeal presents questions regarding the bankruptcy court's construction and application of section 547(c) of the Bankruptcy Code to the undisputed factual circumstances involved in Counts V, VI, and VII of an adversary proceeding initiated by the appellee Trustee in Bankruptcy against the appellant Valley Candle Mfg. Co.
The appellee alleged in Count V of his complaint that the debtor, within 90 days prior to the filing of bankruptcy, while insolvent, made a $571.83 payment to appellant by Check No. 57312 dated November 25, 1981 and that said transfer constituted a preference and was voidable under section 547 of the Bankruptcy Code. Count VI made similar allegations in regard to a $3,301.04 payment by Check No. 57163 dated November 19, 1981. Count VII made similar allegations in regard to a payment of $2,150.00 by check No. 57033 dated November 16, 1981. The parties agree that all of the checks involved in Counts V, VI, and VII cleared for payment prior to the filing of bankruptcy.
Count VIII, however, was based on a different theory. That count, involving check No. 6497 in the amount of $3,530.25 dated December 8, 1981, admittedly cleared after the filing of debtor's petition in bankruptcy on January 22, 1982 and was accordingly subject to being adjudged a voidable preference under section 549 of the Bankruptcy Code. Appellant agreed in both the bankruptcy court and in this Court that the post-petition payment involved in Count VIII should properly be adjudged a preference under section 549.
Appellant's answer to appellee's complaint pleaded a separate affirmative defense under section 547(c)(4) to appellee's Counts V, VI, and VII, alleging respectively in regard to each count, that after receipt of the $571.83 payment involved in Count V; that after the receipt of the $3,301.04 payment involved in Count VI; and that after the receipt of the $2,150.00 payment involved in Count VII, the appellant shipped new goods to the debtor and that under section 547(c)(4), the appellee could not avoid any of the transfers involved in Counts V, VI, and VII.
Appellant proposed, and the bankruptcy court adopted as its own finding of fact, the following:
After check [No. 57033] in the sum of $2,150.00 was received by Valley Candle on November 23, 1983, invoice 282300 dated 12/08/81 in the amount of $3,530.25 was sent to the debtor. After check [No. 57163] in the sum of $3,301.04 was received by Valley Candle on December 1, 1981, invoice 284589 dated 12/10/81 in the amount of $1,549.75 was sent to the debtor. After check [No. 57312] in the sum of $571.83 was received by Valley Candle on January 5, 1982, invoice 287909 dated 1/14/82 in the amount of $1,797.90 was sent to the debtor.
While the above findings of fact accurately stated that particular shipments were made after particular checks were received by the appellant, those findings of fact did not reflect the highly relevant and precise sequence of the dates on which the checks were received and the dates on which particular shipments were made. *647 Accordingly, we set forth in Table A the sequence of the dates of the checks received and the dates the shipments were made.

 Table A
 Date Alleged Preference New Value Shipment
 (11 U.S.C. § 547(b)) (11 U.S.C. § 547(c)(4))
(1) 11/23/81 $2,150.00 check received (Count
 VII of complaint)
(2) 12/1/81 $3,301.04 check received (Count
 VI of complaint)
(3) 12/08/81 $3,530.25 shipment per Invoice
 No. 282300
(4) 12/10/81 $1,549.75 shipment per Invoice
 No. 284589
(5) 1/5/82 $571.83 check received (Count
 V of complaint)
(6) 1/14/82 $1,797.90 shipment per Invoice
 No. 287909
(7) 1/22/82 Bankruptcy petition filed.
(8) 1/27/82 $3,530.25 check paid (Count VIII of complaint).
 Conceded by appellant to be a preference under
 section 549 of Bankruptcy Code.

Although the appellee's claims under Counts V, VI, and VII were based on section 547(b) and appellee's claim under Count VIII was based on section 549, the bankruptcy court lumped all of the claims together and proceeded on the theory that "the total amount of payments by debtor to Valley Candle which the trustee seeks to recover is $9,553.12." In its construction and application of section 547(c)(4), the bankruptcy court noted that the appellant "has been paid for all but the last two invoices [referring to the (4) 12/10/81 invoice of $1,549.75 and the (6) 1/14/82 invoice of $1,797.90 in the above table] which total $3,347.65." The bankruptcy court, without the citation of any legal authority, concluded that "It thus appears that [$3,347.65] is the correct amount to set off against the $9,553.12 sought by the plaintiff [as claimed in all four counts of the complaint]".
The bankruptcy court accordingly adjudged that appellee recover $6,205.47 from appellant, a figure it arrived at by subtracting the total of the "unpaid invoices" from the total of all four of appellee's claims as alleged in Counts V, VI, VII and VIII of the complaint.

II.
The parties are in agreement in regard to the questions presented on appeal. Appellant contends that: "The court below has made an erroneous conclusion of law as to the application of Section 547(c)(4) to its findings of fact"; that "the determination that that section applied only to unpaid invoices to set off against the preferential payments under Section 547(b) is not the proper interpretation of the law"; and that "the proper application of Section 547(c)(4) to the facts of Counts V, VI, and VII would allow the appellant to retain all the payments in these counts made by the debtor during the 90 days preceding the filing of the debtor's petition." Appellee, on the other hand, contends that "The bankruptcy court correctly concluded that only the unpaid invoices could constitute `new value' under 11 U.S.C. § 547(c)(4)."
As above noted, the parties agree that appellee is entitled to judgment on Count VIII, involving Check No. 6497 in the amount of $3,530.25, which cleared on January 27, 1982, a date after the filing of bankruptcy. It should be further noted *648 that neither party contends that the bankruptcy court's findings of fact were clearly erroneous.
The judgment of the bankruptcy court will be reversed and appropriate orders will be entered sustaining appellant's separate section 547(c)(4) defenses to Counts V, VI, and VII. A further order will be entered in favor of appellee in regard to the uncontested section 549 claim alleged in Count VIII for the reasons we now state.

III.
The files and records in the bankruptcy court show that on November 3, 1983, the bankruptcy judge entered an order requiring the parties to show cause why attached "findings of fact, conclusions of law and final judgment for plaintiff in the sum of $6,205.47 plus interest at the legal rate from January 14, 1982" should not be entered. Appellee filed no response to the order to show cause, thus indicating that he had no objection to the bankruptcy court's tentative findings of fact and tentative conclusions of law. Appellant did not complain about any of the bankruptcy court's findings of fact. As will be noted in detail, however, appellant stated its objections to the conclusions of law tentatively stated by the bankruptcy court.
In its tentative conclusions of law, the bankruptcy court quoted the portion of section 547(c)(4) of the Bankruptcy Code which provides that "[T]he Trustee may not avoid under this section a transfer . . . to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of a debtor (A) not secured by an otherwise unavoidable security interest; and (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor." The bankruptcy court then properly stated that "[t]his section is interpreted to mean that `[p]referential transfers as defined in § 547(b) may not be avoided by the trustee if "after such transfer, such creditor gave new value." In re Fulghum Const. Corp., 706 F.2d 171, 172 (6th Cir.1983). See also In re Gold Coast Seed Co., 30 B.R. 551 (9th Cir.1983).'"
The bankruptcy court, however, added the following, which, as a practical matter, ruled the case:
"But, according to the defendant's own contentions, it has been paid for all but the last two invoices which total $3,347.65. It thus appears that this is the correct amount to be set off against the $9,553.12 sought by the plaintiff. (Emphasis ours).
Appellant's response to the bankruptcy court's order to show cause respectfully stated that the bankruptcy court's statement of the appellant's contention as above quoted was "incorrect." Appellant's counsel accordingly enclosed a proposed amendment to the bankruptcy court's tentatively stated conclusion of law which would strike the inaccurate statement of defendant's contention and proposed that the following be added immediately after the bankruptcy court's citation of In re Gold Coast Seed Co., 30 B.R. 551 (9th Cir.1983):
Consequently, based on the record before the Court, most of the payments the Trustee seeks to recover from the defendant are not available as preferences pursuant to 11 U.S.C. 547(c)(4). Alleged preferential transfers, check [No. 57033] in the sum of $2,150.00, check [No. 57163] in the sum of $3,301.04, and check [No. 57312] in the sum of $571.83 were each followed by subsequent shipments of goods, supra, which constitute new value for the purposes of Section 547(c)(4), the aggregate value of which more than offsets the amount of payments sought by the Trustee as preferential payments. In regards to the payment of the check in the amount of $3,530.25 on January 27, 1982, five days after the bankruptcy filing on January 22, 1982, [that transfer] must be voided under Section 549.
The bankruptcy court rejected the conclusion of law proposed by appellant. We find and conclude that the bankruptcy court erred in its construction and application *649 of section 547(c)(4) in regard to Counts V, VI, and VII of appellee's complaint.

IV.
The files and records show that the appellee's proposed conclusions of law filed in the bankruptcy court did not contain any suggestion that the bankruptcy court should conclude that only unpaid invoices could be considered as "new value" under 11 U.S.C. § 547(c)(4). Appellee simply proposed that the bankruptcy court find and conclude under section 547(b) that the $571.83 check involved in Count V, the $3,301.04 check involved in Count VI, and the $2,150.00 check involved in Count VII, all cleared the bank within 90 days prior to the bankruptcy filing; that the debtor was insolvent at the time of the transfers; and that, pursuant to the well established rule stated in In re Saco Local Development Corp., 30 B.R. 859, 862 (Bkrtcy.D.Me.1983), the bankruptcy court could take judicial notice of the schedule of assets and liabilities and other relevant data in the case file to support a finding and conclusion that the transfer of the three checks would enable the appellant to obtain more than it would otherwise receive in a bankruptcy distribution. It is thus clear that the notion that section 547(c)(4) could be applied only to the appellant's unpaid invoices originated with the bankruptcy court; not with counsel for either party.
The bankruptcy court cited, but failed properly to apply, the applicable section 547(c)(4) law as stated in In re Gold Coast Seed Co., supra. Under the facts involved in that case, the creditor received full payment of its $62,920.00 indebtedness on March 31, 1980, within 90 days of bankruptcy, and thereafter advanced new credit on April 2 and 3, 1980 in the amount of $54,340.00. The bankruptcy court was reversed because its judgment failed to offset, pursuant to section 547(c)(4), the full $54,340.00 new value against the earlier made $62,920.00 payment.
The Ninth Circuit stated its agreement with "the analysis in In re Thomas W. Garland, Inc., 19 B.R. 920 (Bkrtcy.E.D.Mo. 1982) that the `net result' rule has no application under the Bankruptcy Code" and concluded in regard to section 547(c)(4) that "[t]o the extent the Appellant extended new credit to the debtor in reliance upon receipt of payment, to deny credit for new value would be inequitable and unsound as a matter of policy." 30 B.R. at 553.
The Sixth Circuit in In re Fulghum Const. Corp., also accepted Bankruptcy Judge Robert Brauer's careful analysis of the "net result rule" as stated in In re Thomas W. Garland, supra, and concluded that "Section 547(c)(4) is perhaps most accurately characterized as a `subsequent advance rule'." The Sixth Circuit concluded that "[p]referential transfers as defined in § 547(b) may not be avoided by the trustee if `after such transfer, such creditor gave new value'." 706 F.2d at 172. That court added that "the subsequent advance rule of § 547(c)(4) is more circumscribed in application [than the old `net result' rule] and forecloses avoidance of the transfer by the trustee only after the transfer from the debtor to the creditor." Id. at 173. The Court then quoted the Report of the Commission to illustrate the change made by section 547(c)(4): "A true `net result' rule would total all payments and all advances and offset the one against the other. This is not allowed under the Commission's recommendation, since the advance to be offset must be subsequent to the preference." Id. at 174.
As we have noted, both the Sixth Circuit in In re Fulghum Const. Co., supra, and the Ninth Circuit in In re Gold Coast Seed Co., supra, cited and relied on Bankruptcy Judge Brauer's analysis of Section 547(c)(4) in In re Thomas W. Garland, Inc., supra. Both those courts agreed with that case's conclusion that although a part of the legislative history stated that section 547(c)(4) "codifies the net result rule," the new statute as enacted, simply did not accomplish that stated purpose. Bankruptcy Judge Brauer added that: "Because the net result rule was not codified in the language of the new Bankruptcy Code and because the courts were in general disagreement about *650 the rule and its application under the old Act, it is impossible to ascribe more than a general intent on the part of Congress to retain the concept of the net result rule in current law."
In re Thomas W. Garland, Inc. further concluded, and we agree, that "the drafters of the Code were attempting to retain at least the principles behind the rule in section 547(c)(4) and to recognize the realities of ordinary business transactions" and further concluded that under section 547(c)(4) a "creditor is encouraged to cooperate with a financially troubled debtor and is protected to the extent that he extends new credit in reliance on prior payments." That case accordingly held:
Whatever the net result rule may have been under the prior Bankruptcy Act, Congress has indicated that, under the Bankruptcy Code, the rule is to be applied according to the formula set forth in section 547(c)(4). A creditor who has received a preferential transfer may retain that transfer to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor. (Emphasis, the court's.)
It should be further noted that In re Thomas W. Garland, Inc. expressly rejected the debtor's argument that "section 547(c)(4) be interpreted to allow set off only of new value provided immediately after one preferential transfer and prior to the next preferential transfer on the ground that the suggested interpretation `places limitations on the creditor's right of set off not found in the statutory language.'" (Emphasis ours.) We agree.
On its facts, In re Thomas W. Garland, Inc. did not present as complicated a case as that presented by the case at bar. For it is clear in that case that "each payment [made by the debtor to the creditor] was followed by the extension of new credit in a sum in excess of the challenged payment." It was therefore adjudged that the creditor was "entitled to retain all payments made to it" by the debtor for the reason that "each dollar of the preferential payment may be set off against each dollar of new value," although "the set off may not be greater than dollar for dollar."
Bankruptcy Judge Johnson applied the subsequent advance rule of section 547(c)(4) in three adversary proceedings reported under the general caption of In re Saco Local Development Corp. The first, involving the bankruptcy trustee's action against Prime Leather Finishes, is reported in 30 B.R. 859 (Bkrtcy.D.Me.1983); the second, the bankruptcy trustee's action against Chemical Sales and Service, is reported in 30 B.R. 862 (Bkrtcy.D.Me.1983); and the third, is reported in 30 B.R. 867 (Bkrtcy.D.Me.1983). All three cases adopted the conclusion stated in In re Thomas W. Garland, supra, that section 547(c)(4) required the application of a new subsequent advance rule rather than the old net result rule.
Prime Leather Finishes, supra, on its facts, involved the creditor's various shipments of goods after the receipt of checks from the debtor, all received during the 90-day period. In the first transaction, the creditor, after receipt of a $29,583.00 check on January 19, 1981, made three shipments on January 21, 23, and 29, 1981 of a total value of $39,095.45. Bankruptcy Judge Johnson held that the transfer of the $29,582.00 check was "excepted from the trustee's avoidance powers under section 547(a)(4) because `after such transfer' Prime `gave new value' . . . to the debtor. 11 U.S.C. § 547(a)(4)." 30 B.R. at 862.
The creditor, thereafter made similar new value shipments after receiving two additional checks on February 2 and 17, 1981. In both instances, the total amount of goods shipped after the receipt of each check exceeded the amount of each check received. The rule applied to the first transaction was accordingly applied to the transactions involving both the February 2, 1981 check and the February 17, 1981 check.
In regard to all the transactions involved in Prime Leather Finishes, supra, the creditor was not permitted, as he would have been entitled under the old net result rule, to carry forward any of the excess *651 new value contributions created for the purpose of increasing the amount of set off in regard to payments received after the shipment of additional new value goods. Under the subsequent advance rule of section 547(a)(4), the creditor was entitled to offset only the total amount of the subsequent shipments. The creditor was, however, permitted to total up preferential payments and set off that sum against the total amount of new value subsequently advanced.
This is made clear by Bankruptcy Judge Johnson's application of the subsequent advance rule of section 547(a)(4) to the last two transfers involved in Prime Leather Finishes, supra. The creditor, after receipt of a number of additional checks on February 27, 1981, in the total amount of $31,077.81, made two shipments on March 2 and 6, 1981 of a total new value of $27,129.65. In regard to that check, it was held that "applying the rule of section 547(c)(4) all but $3,948.26 of the February 27, 1981 preferential transfers are excepted from avoidance." In like manner, the creditor, after receipt of a number of other checks in the total amount of $30,885.04 on March 12, 1981, shipped goods on March 20, 1981 of a total new value of $10,239.58. It was held that the creditor "is entitled to credit for this new value, leaving $20,645.46 avoidable by the trustee of this $30,885.04 transfer."
Bankruptcy Judge Johnson made similar applications of the subsequent advance rule of section 547(c)(4) in Chemical Sales and Service, supra, see the table set forth in 30 B.R. at 866, and in Southern Maine Metal, see the table set forth in 30 B.R. at 872. All three of the adversary proceedings reported under the general title of In re Saco Local Development Corp., supra, show that, unlike the old net result rule, the subsequent advance rule of section 547(c)(4) does not apply to the 90-day preference period as a whole; rather, the inquiry must focus on the total amount of preferential transfers received by a creditor before the shipment of any new value goods and on the total amount of new value goods shipped by the creditor to the debtor after those particular transfers were made.
While it may generally be stated, as Bankruptcy Judge Schwartzberg did state in In re Rustia, 20 B.R. 131, 135 (Bkrtcy.S.D.N.Y.1982), that the subsequent advance rule provided in section 547(c)(4) requires that "each transfer must be examined independently to determine whether or not the creditor later replenished the estate," it must be understood that such a statement is a general, rather than a particular, statement as to how the subsequent advance rule is to be applied. For it is clear, as our discussion of the application of subsequent advance rule in the above cases demonstrates, should a creditor, within the 90-day period, receive several checks on several different days before making a shipment of new value goods, the creditor is entitled to have all those checks totaled for the purpose of establishing the net amount of the alleged preferential transfer. By the same token, in determining the amount of offset to which a creditor may be entitled under section 547(c)(4), the creditor is entitled to the total amount of all shipments of new value goods that may have been made on separate days after receipt of a payment from the debtor.
Our construction of section 547(c)(4) is consistent with the actual application of that section in the cases discussed above. More important, that construction and application is consistent with the Congressional policy declared in section 547(c)(4) which was designed to encourage and to protect a creditor who contributes new value goods or credit to a debtor in financial difficulty, after the debtor has made a payment on account of an existing debt. We quite agree with the Ninth Circuit's statement in In re Gold Coast Seed Co., supra, that "the purpose of § 547(c)(4) is precisely to encourage trade creditors to continue dealing with troubled businesses."

V.
Appellant in its conclusion of law originally proposed in the bankruptcy court, in *652 its response to the bankruptcy court's order to show cause, and in its briefs filed on appeal in this Court, has consistently contended that it was entitled to the benefit of the old net result rule. For example, in its brief on appeal in this Court, appellant contended that it was entitled to judgment on the section 547(b) Counts V, VI, and VII for the reason that "the total amount of new credit furnished to the debtor was $6,877.80 and the sum of the challenged preferential payments was $6,022.98."
We find and conclude that appellant is entitled to off set only the total amount of shipments of new value made after receipt of a particular preferential transfer from the debtor. This is because new value contributions may be excepted from the trustee's avoidance power conferred by section 547(b) only if "after such transfer" the creditor "gave new value . . . to the debtor," as provided in section 547(c)(4). Any surplus new value contribution may not be carried forward under section 547(c)(4), as was formerly the case under the old net result rule. Section 547(c)(4) as enacted by the Congress, will be applied to the undisputed factual circumstances of this case.
Quite by happenstance, the appellant would be entitled to prevail in regard to appellee's section 547(b) claims alleged in Counts V, VI, and VII under either the old net result rule or by proper application of the subsequent advance rule provided in section 547(c)(4). Because we have rejected appellant's contention in regard to the continued vitality of the old net result rule, it is appropriate that we state our application of the subsequent advance rule of section 547(c)(4) in some detail. For it is clear from what we have said above, that a slight shift in the precise sequence of the dates on which the checks were received and the dates on which the shipments were made would produce a result under section 547(c)(4) quite different from the result that would be produced by application of the old net result rule to those altered circumstances.
Application of the subsequent advance rule of section 547(c)(4) to the undisputed facts summarized in Table A establishes that appellant is entitled to judgment in regard to all three of the checks involved in Counts V, VI, and VII. It is clear that appellant received both the November 23, 1981 $2,150.00 check involved in Count VII and the December 1, 1981 $3,301.04 check involved in Count VI, before it made any new value shipments. Thus, as of December 1, 1981, appellee had a net 547(b) preference claim of $5,451.04.
New value shipments, however, were made by appellant on December 8, 1981 and December 10, 1981 in the total amount of $5,080.00. Appellant's section 547(c)(4) offset therefore reduce appellee's net preference as of December 10, 1981 to $371.04. Appellee's net preference claim was thereafter increased to $942.87 by appellant's receipt of the January 5, 1982 $571.83 check involved in Count V.
Appellant's $1,797.90 shipment, made January 14, 1982, after the receipt of the $571.83 check, however, totally eliminated the net preference of $942.87 that existed as of January 5, 1982.
For purposes of clarity, we set forth the calculations of the section 547(c)(4) subsequent advance off sets just stated in Table B:

 Table B
 § 547(c)(4)
 Date Preferences New Value Offsets
----------------------------------------------------------------------------------
(1) 11/23/81 $2,150.00 check
(2) 12/1/81 $3,301.04 check (Net preference $5,451.04
 ________
 $5,451.04 as of 12/1/81
(3) 12/08/81 $3,530.25 shipment
(4) 12/10/81 $1,549.75 shipment
 ________
 $5,080.00 -$5,080.00
 _________
 (total new value
 offset)
*653
 Table B
 § 547(c)(4)
 Date Preferences New Value Offsets
----------------------------------------------------------------------------------
 (Net preference $371.04
 as of 12/10/81)
(5) 1/5/82 $ 571.83 check $ 571.83
 ________
 (Net preference $942.87
 as of 1/5/82)
(6) 1/14/82 $1,797.90 shipment -$1,797.90
 (new value offset) _________
 (Net preference -0-
 as of 1/14/82)

VI.
We have considered and expressly reject appellee's argument, primarily based on language quoted out of context from In re Saco Local Development Corp., supra, and from In re Bishop, 17 B.R. 180 (Bkrtcy.N.D.Ga.1982), that the new value rule of section 547(c)(4) should be limited to new value that is unpaid. We have discussed all three of the adversary proceedings reported in In re Saco Local Development Corp. The fact that some invoice may or may not have been paid was not a relevant factor in the application of the subsequent advance rule of section 547(c)(4) to the factual circumstances presented in any of those cases. In In re Bishop, supra, the bankruptcy court stated that it was "inclined to agree [with the argument that section 547(c)(4)] is clear and unequivocal on its face." We fully agree. We add that section 547(c)(4) does not contain any language that even suggests that the new value rule contained therein is somehow to be limited to unpaid invoices.
That section contains only two exceptions to the set off of new value advanced after a payment: (1) when the new value is secured by an otherwise unavoidable security interest; and (2) when, on account of the new value given, the debtor makes an otherwise unavoidable transfer to or for the benefit of the creditor. Neither exception is applicable under the facts of this case. The dictum in the cases relied upon by the appellee to the effect that the new value must be "unsecured" and go "unpaid" is an inaccurate and confusing paraphrase of the clearly stated statutory exceptions.
The confusion engendered by the gloss formerly placed on the judicially evolved net result rule should be avoided in cases involving the construction and application of the new subsequent advance rule provided in section 547(c)(4). Application of the clear and unequivocal language of section 547(c)(4) to the facts as found by the bankruptcy court requires that appellant's new value defense be recognized in regard to the three checks involved in Counts V, VI, and VII of appellant's complaint in the manner above stated. The bankruptcy court should, of course, be affirmed in regard to its determination of Count VIII.

VII.
Accordingly, and for the reasons stated it is
ORDERED (1) that pursuant to Rule 8013 of the Bankruptcy Rules, the judgment of the bankruptcy court in regard to Counts V, VI, and VII of appellee's complaint should be and the same is hereby reversed. It is further
ORDERED (2) that the Clerk shall, in accordance with Rule 58 of the Rules of Federal Procedure, set forth on a separate document and enter judgment in favor of the appellant Valley Candle Mfg. Co. and against the appellee John R. Stonitsch, *654 Trustee in Bankruptcy, in regard to Counts V, VI, and VII of said appellee's complaint.
Said judgment shall also provide that judgment be entered in favor of appellee John R. Stonitsch, Trustee in Bankruptcy and against appellant Valley Candle Mfg. Co. in regard to Count VIII of said appellee's complaint in the sum of $3,530.25 with interest at the legal rate from January 27, 1982.