In re TELECOMMUNICATION
SERVICES, INC., Debtor,

**Richard M. RIEZMAN, Plaintiff,**

v.

**PHILLIPS PETROLEUM
COMPANY, Defendant.**

**Bankruptcy No. 81–00301(3).
Adv. No. 82–0837(3).**

United States Bankruptcy Court,
E.D. Missouri, E.D.

Sept. 23, 1985.

John T. Mohan, Clayton, Mo., for defendant.

Leslie A. Davis, Clayton, Mo., for trustee.

Edward M. Goldenhersh, St. Louis, Mo., for debtor.

## MEMORANDUM

JAMES J. BARTA, Bankruptcy Judge.

At Saint Louis, in this District, this 23rd day of September, 1985.

This proceeding is based upon a complaint by the Trustee to avoid allegedly preferential payments made by the corporate debtor to this Defendant during the ninety days preceding bankruptcy, and to recover the value of the payments in the amount of $3,815.60. The defendant has acknowledged that the payments were made within the ninety day period, but argues that as a consequence of extensions of new value in the form of credit card charges, the net result is that the trustee may not avoid the preferential transfers. The matter has been submitted to the Court upon the defendant's motion for summary judgment and supporting memorandum, and on the arguments of counsel at a pre-trial hearing on February 24, 1983. The parties have agreed that the ruling on this motion shall be dispositive of the issues.

The facts as they appear in the record are essentially undisputed. The debtor's bankruptcy petition was filed on February 13, 1981. Prior to that date, the debtor had maintained a revolving credit card account with the defendant, whereby the debtor's

gas and oil purchases were billed at approximately thirty day intervals. During the ninety days preceding bankruptcy, the debtor made two payments on the revolving account. It is unclear from the record if these were full payments of an item referred to as "New Non-Revolving Purchases", or if they were partial payments of a "Minimum Payment Due" upon the revolving installment debt. Also during the ninety day period preceding bankruptcy, the debtor continued to make charge purchases of gas and oil which were added to the revolving account. The transactions may be summarized as follows:

| November 25, 1980 | Debtor's payment in the amount of $985.37 |
| November 25, 1980 to December 23, 1980 | Debtor incurred new charge purchases totaling $2,487.84 |
| December 23, 1980 | Debtor's payment in the amount of $2,800.80 |
| December 23, 1980 to February 13, 1981 | Debtor incurred new charge purchases totaling $2,444.80 |

The defendant has urged that the total of all new charges incurred during the ninety day period should be netted out against the total payments made by the debtor during the same period; and that since the charges were greater than the payments, the Trustee should not be allowed to set aside the transfers and recover the value of the payments.

Section 547(c)(4) of Title 11 of the United States Code describes a limitation on the trustee's avoiding powers:

"(c) The trustee may not avoid under this section a transfer....

(4) to or for the benefit of a creditor to the extent that, after such transfer, such creditor gave new value to or for benefit of the debtor....

(a) not secured by an otherwise unavoidable security interest; and

(b) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor."

It is the defendant's contention then that the net result rule should apply to the entire ninety day period as a whole. Although some support for this position may be extracted from the legislative history of Section 547,[1] most analyses of the law as finally passed have concluded that the net result rule has not been mandated by the Bankruptcy Reform Act of 1978.[2]

The inapplicability of the net result rule to a trustee's preference action under the Bankruptcy Code has been stated in at least two recent Bankruptcy Court decisions. In a proceeding involving credit card payments and charges, Judge Howard Schwartzberg of the New York Bankruptcy Court determined that Section 547(c)(4) was not consistent with a creditor's view which would apply the net result rule to the entire 90 day preference period.

Thus, only preferential transfers made by the debtor before the new value was given may be netted out against the subsequent new value. However, prefer-

1. "The fourth exception codifies the net result rule in section 60 c of current law. If the creditor and debtor have more than one exchange during the 90-day period, the exchanges are netted out according to the formula in paragraph (4). Any new value that the creditor advances must be unsecured in order for it to qualify under this exception." H.R.Rep. No. 595, 95th Cong., 1st Sess. 374 (1977), *reprinted in* (1978 (U.S.Code Cong. & Ad.News 5963, 6330); S.Rep. No. 989, 95th Cong., 2d Sess. 88 (1978), *reprinted in* (1978 (U.S.Code Cong. & Ad.News 5787, 5874) ).

2. "Code § 547(c)(4) has its most frequent application in revolving credit relationships. In this context, it is often confused with the so-called "net result rule," an analytical approach that considers all payments and extensions of credit received during the period applicable to preference law and permits recovery of only the net gain received by the creditor. This rule was applied in cases at the beginning of the 20th Century, but is of doubtful current validity. In contrast to the "net result" test, the subsequent advance rule protects preferential transfers only to the extent that subsequent advances are made." 2 Norton Bankruptcy Law & Practice, pt. 32, p. 58 (1982).

"Section 547(c)(4) substantially restates former Section 60c of the prior law. Nevertheless, Section 547(c)(4) is not as may be suggested, a codification of the so-called "net result" rule of prior law." 4 Collier on Bankruptcy, paragraph 547.40(1) (15th ed. 1983).

ential payments following receipt of new value are not netted against the new value. Thus, the net result rule does not apply to the 90 day preference period as a whole; each transfer must be examined independently to determine whether or not the creditor later replenished the estate. (citation omitted). *In re Rustia*, 20 B.R. 131, 135 (Bkrptcy., S.D.N.Y., 1982).

In a case involving a Chapter 11 debtor's payments to an electric utility, Judge Robert Brauer of this Court stated that a comparison of Section 547(c)(4) with the net result rule demonstrates that the rule as originally propounded by the Courts was not codified by the Bankruptcy Act of 1978, notwithstanding the legislative history which might suggest to the contrary. *See, In re Thomas W. Garland*, 19 B.R. 920, 925 (Bkrptcy., E.D.Mo., 1982). *See also, In re Fulghum Construction Corp.*, 706 F.2d 171 (6th Cir.1983) ); *Matter of Craig Oil Co.*, 31 B.R. 402 (Bkrptcy.M.D.Ga., 1983); and *In re Blair C. Bishop*, 17 B.R. 180 (Bkrptcy.N.D.Ga., 1982).

Thus, the trustee here may not avoid the preferential transfer of a payment to this defendant, made within ninety days preceding bankruptcy, to the extent that the creditor gave new unsecured value *after the payment* had been made. The defendants contention that all preferential payments are to be added together and then netted against the total new value extended during the ninety day period is inconsistent with Section 547(c)(4).

Therefore, the trustee's right to avoid and recover the preferential transfers in this case is determined by netting the debtor's first payment on November 25, 1980 in the amount of $985.37 against the new value extensions of credit in the amount of $2,487.84, which were incurred after the first payment. The result is that the subsequent advances of new value provide a complete defense to the trustee's avoiding powers as to the first payment. Similarly, the debtor's second preferential payment on December 23, 1980 in the amount of $2,800.00 is netted against the new value

extensions of credit in the amount of $2,444.80 which were incurred after the second payment. The result is that the second payment was greater than the subsequent advances and, all other requirements having been satisfied, the trustee may

By a separate order, judgment is being entered in favor of the trustee in the amount of $355.20.