**In re HARTWIG POULTRY, INC., Debtor.**

**HARTWIG POULTRY, INC., Plaintiff,**

**v.**

**CW SERVICE, et al., Defendants.**

**Bankruptcy No. 84–0256.**
**Related Case: 84–0256.**

United States Bankruptcy Court, N.D. Ohio, W.D.

Dec. 5, 1985.

John J. Hunter, Toledo, Ohio, for plaintiff.

Stephen D. Strauss, Cincinnati, Ohio, for defendant.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court for Trial on the Complaint To Avoid Prefer-

ential Transfer against the Defendant Main Hurdman. The Court has heard the evidence offered by the parties and the arguments made by counsel. The Court also afforded the parties the opportunity to submit post-trial memorandum. The parties have filed such arguments and have had the opportunity to respond to the arguments made by opposing counsel. The Court has reviewed the evidence, the arguments, and the entire record in this case. Based upon that review and for the following reasons the Court finds that Judgment should be entered for the Plaintiff.

## FACTS

The facts in this case do not appear to be in serious dispute. Main Hurdman (hereinafter Hurdman) is an accounting service which performed work for the Plaintiff/Debtor-In-Possession for approximately two (2) years prior to the filing of the Debtor-in-Possession's Petition On July 30, 1982, Hurdman sent to the Debtor-In-Possession a bill for accounting services performed through June 30, 1982. This bill was for Eight Thousand and no/100 Dollars ($8,000.00). On August 19, 1982, Hurdman sent a second bill to the Debtor-In-Possession for services performed in July of that same year. The amount of that bill was Twelve Thousand Eight Hundred and no/100 Dollars ($12,800.00).

The Court has not been presented with evidence as to the specific dates on which Hurdman rendered services for the Debtor-In-Possession. However, it appears that Hurdman rendered services to the Debtor-In-Possession subsequent to the August 19, 1982, billing. The value of these services, as asserted by Hurdman, are in the amount of One Thousand Five Hundred Thirty-three and 80/100 Dollars ($1,533.80).

On August 20, 1982, the Debtor-In-Possession issued a check to Hurdman in payment of the services rendered prior to June 30, 1982. This check was negotiated at the drawee bank on September 8, 1982. On September 21, 1982, the Debtor-In-Possession issued a second check to Hurdman in the amount of Six Thousand Four Hundred and no/100 Dollars ($6,400.00). This check represented payment of one-half (½) of the August 19, 1982, bill.

On October 19, 1982, the Debtor-In-Possession filed its voluntary Chapter 11 Petition with this Court. In an effort to collect assets for the estate, the Debtor-In-Possession filed this adversary action. In this action the Debtor-In-Possession seeks to recover from Hurdman the monies paid on the July 30, 1982 and August 19, 1982 invoices. Hurdman has defended against this action by asserting that the Debtor-In-Possession was not insolvent at the time the transfers were made, and that the transfers were within the "business expense" exception to the provisions of the Bankruptcy Code which allow the Debtor-In-Possession to recover preferential transfers. In that regard, Hurdman has offered evidence that the Debtor-In-Possession had unused credit of approximately Two Hundred Thousand and no/100 Dollars ($200,000.00) with its primary financier, and that one of the Debtor-In-Possession's larger debts was to a company closely related to the Debtor-In-Possession. Hurdman also offered evidence as to the fact that the time which elapsed between the billing and the receipt of payment from the Debtor-In-Possession was normal as between these two parties.

## LAW

Prior to the enactment of the Bankruptcy Amendments and Federal Judgeship Act of 1984, P.L. 98–353, the provisions of 11 U.S.C. Section 547 stated in pertinent part:

(b) ... the trustee may avoid any transfer of property of the debtor—

(1) to or for the benefit of the creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition;

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title."

(c) The trustee may not avoid under this section a transfer ...

(2) to the extent that such transfer was—

(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made not later than 45 days after such debt was incurred;

(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(D) made according to ordinary business terms.

The pre-amendment version of that section is applicable to this adversary proceeding, inasmuch as the Chapter 11 case was filed prior to the effective date of the amendments. *See,* P.L. 98–353 Section 553(a).

Under these provisions, a trustee or a debtor-in-possession, *see,* 11 U.S.C. Section 1107, may avoid the transfer of an interest of the debtor in property which was made to a creditor on account of an antecedent debt within ninety (90) days prior to the petition if the debtor was insolvent at the time of the transfer and if the transfer enables the creditor to receive more than they would have received in a Chapter 7 proceeding had the transfer not been made. *Allison v. First Nat. Bank & Trust Co. (In re Damon),* 34 B.R. 626 (Bkcy.D.Kan. 1983). A trustee may not avoid any transfer to the extent it was payment of an ordinary business expense which was incurred within forty-five (45) days prior to the time the transfer was made. *Quinn v. TTI Distribution Corp. (In re Moran Air Cargo, Inc.),* 30 B.R. 406 (Bkcy.R.I.1983). In that regard, it is generally held that when a transfer to a creditor is accomplished by check, the transfer does not occur until the check is honored by the drawee bank. *See, Harris v. Harbin Lum-*

*ber Co. of Royston, Inc. (Matter of Ellison),* 31 B.R. 545 (Bkcy.M.D.Ga.1983).

In the present case it is apparent that at the time the Debtor-In-Possession issued the two checks to Hurdman, it was indebted to Hurdman for services rendered prior to the payment. Accordingly, it must be concluded that Hurdman was a creditor of the Debtor-In-Possession, and the debt in question was antecedent in nature. It is also apparent that the transfers were made within ninety (90) days prior to the filing of the Debtor-In-Possession's Petition. A review of the Debtor-In-Possession's schedules and the evidence finds that at the time of the filing of the Petition the Debtor-In-Possession had approximately One Million Eight Hundred Thousand and no/100 Dollars ($1,800,000.00) in liabilities and One Hundred Seventy Thousand and no/100 Dollars ($170,000.00) in assets. This would indicate that the general unsecured creditors would receive less than a ten percent (10%) distribution in the event the Debtor-In-Possession was liquidated. Since the transfers enabled Hurdman, a general unsecured creditor, to receive approximately sixty-nine percent (69%) of the amount is as owed, it must also be concluded that the transfers allowed Hurdman to receive more than would have been received under a Chapter 7 liquidation. Therefore, four of the five elements of an action to recover a preferential transfer have been demonstrated.

With regard to the fifth and final element, Hurdman has attempted to negate the presumption of insolvency, *see,* 11 U.S.C. Section 547(f), by showing that the Debtor-In-Possession had sufficient unused credit with its primary financier so as to render the corporation solvent. This assertion is made in conjunction with the assertion that one of the debts listed by the Debtor-In-Possession should not be considered when calculating the Debtor-In-Possession's total liabilities. This debt is owed to Hartwig Poultry Farms, Inc., a corporation which is alleged by Hurdman to be indistinguishable from the Debtor-In-Possession. Hurdman asserts that the proxim-

ity of the relationship between these corporations should cause the corporations to be considered as one entity, thereby negating the debt to the second corporation as a debt of the Debtor-In-Possession.

■ The Court notes, from its prior involvement in this Chapter 11 proceeding, that there is a relationship between the Debtor-In-Possession and Hartwig Poultry Farms, Inc. However, Hurdman has presented little, if any, evidence as to the validity of its claim that the corporations are inseparable. They have not shown any similarity in the ownership or management of these corporations, the mutuality of assets and liabilities, or the fraudulent nature of the transactions between these corporations. Without such evidence the Court cannot find sufficient cause or reason to hold that the debt owed to Hartwig Poultry Farms, Inc., should be discounted from the total of the Debtor-In-Possession's liabilities.

■ Hurdman has also asserted that the availability of unused credit should be counted towards the Debtor-In-Possession's solvency. However, if a balancing test is used to determine solvency, it is difficult to assert that available credit should be considered as an asset when, by the fact of its availability, an equal and offsetting debt is created. Therefore, Hurdman's contention on this point is without merit.

■ It is interesting to note that even if the Court were to accept Hurdman's assertions on both the unused credit and mutual identity of corporations issues, the adjustment in the total of the Debtor-In-Possession's assets and liabilities would still render the Debtor-In-Possession insolvent under the application of a balancing test. The debt owed to Hartwig Poultry Farm, Inc., is approximately Four Hundred Seventy-five Thousand and no/100 Dollars ($475,000.00). When subtracted from the Debtor-In-Possession's total liabilities of One Million Eight Hundred Thousand and no/100 Dollars ($1,800,000.00), the Debtor-In-Possession would be left with liabilities of approximately One Million Three Hun-

dred Twenty-five Thousand and no/100 Dollars ($1,325,000.00). If the approximately Two Hundred Thousand and no/100 Dollars ($200,000.00) in unused credit were added to the Debtor-In-Possession's One Hundred Seventy Thousand and no/100 Dollars ($170,000.00) of assets, the Debtor-In-Possession would have assets totalling approximately One Hundred Ninety Thousand and no/100 Dollars ($190,000.00). As is readily apparent, this adjustment would still find that the Debtor-In-Possession was insolvent at the time the transfers were made. Since the element of insolvency is the final element which must be shown by the Plaintiff in this case, it must also be concluded that the Debtor-In-Possession has presented evidence which, in the absence of a viable defense, entitles it to judgment on the Complaint.

■ As an affirmative defense Hurdman has asserted that the transfers made by the Debtor-In-Possession were within the ordinary course of the Debtor-In-Possession's business and were made within the time period which excepts the transfers from recovery by the Debtor-In-Possession. As indicated in 11 U.S.C. Section 547(c), if a transfer was made according to ordinary business terms and was made within forty-five (45) days from the time the debt was incurred it is not subject to recovery. The Court has already expressed the fact that a transfer, when made by check, is considered to have been made on the day the check is honored by the drawee bank. Therefore, it is necessary to count forward from these dates in order to determine whether or not the debts were incurred within forty-five (45) days from the date of payment.

A review of the facts in this case finds that the check which was sent in payment of Hurdman's July 30, 1982, invoice, was paid by the Debtor-In-Possession's bank on September 8, 1982. If these dates are accepted, then the payment was within forty-five (45) days from the time the obligation arose. Similarly, the check which was sent in payment of Hurdman's August 19, 1982, invoice was paid by the Debtor-In-Posses-

sion's bank on October 3, 1982. This payment was also within the forty-five (45) day parameter.

■ However, it is well established that the date on which an invoice is prepared and sent is not the date upon which the debt is considered to have arisen. Rather, the debt arises on the date the obligation actually was incurred. Stated differently, the debt arises on the date the debtor became legally liable for payment of the debt, and not the date on which the creditor chooses to bill the debtor. *See, Nolden v. Van Dyke Seed Co., Inc. (In re Gold Coast Seed Co.)* 751 F.2d 1118 (9th Cir.1985), *Bob Grissett Golf Shoppes, Inc. v. Confidence Golf Co. (In re Bob Grissett Golf Shoppes, Inc.),* 44 B.R. 156 (Bkcy.E.D.Va.1984), *Brooks Shoe Mfg. Co., Inc. v. Metropolitan Edison Co. (In re Naudain, Inc.),* 32 B.R. 871 (Bkcy.E.D.Pa.1983).

■ In the present case, Hurdman sent to the Debtor-In-Possession on July 30, 1982, a bill for services performed prior to June 30, 1982. Since June 30, 1982, is more than forty-five (45) days prior to the time payment for those services was received, and since the Debtor-In-Possession was bound to pay for the services immediately after they were rendered, it must be concluded that the September 8, 1982, payment of Eight Thousand and no/100 Dollars ($8,000.00) is outside the forty-five (45) day period. Therefore, this payment is not subject to exception claimed by Hurdman. Similarly, the August 19, 1982, invoice requested payment for services rendered through July 30, 1982. Since payment for these services was made more than forty-five (45) days after they were rendered, it must be concluded that this payment is also not subject to the business expense exception.

Hurdman has argued that this case should be controlled by the decision in *Thomas W. Garland, Inc. v. Union Electric Co. (In re Thomas W. Garland, Inc.),* 19 B.R. 920 (Bkcy E.D.Mo.1982). In that case it was held that when services are rendered on a continuing basis throughout a specified period, and it is not practical to

determine the liability for those services until such time as the entity providing those services determines the extent of liability, the obligation to pay for those services does not arise until the entity makes its determination as to the extent of liability. In applying this theory, Hurdman argues that because of the continuing nature of services it rendered to the Debtor-In-Possession throughout the months in question, the debt should not be considered to have arisen until its employees totalled the internally kept time cards which Hurdman used as the basis for its billing process. However, the foundation for decision in *Garland* rested on the impracticality of being able to otherwise determine the extent of the debtor's liability on any given day. In the present case, the parties are not faced with the same impracticalities. Despite the fact that the records have not been presented to this Court, a review of Hurdman's records should reflect the services which were performed on any given day and the amounts which were to be billed for those services. · In view of the availability of this information, it cannot be said that the impracticalities which justified the *Garland* decision are present in this case. Accordingly, it must be concluded that Hurdman's assertion as to the time the debts were incurred is without merit. In view of this conclusion and the fact that the services were actually rendered more than forty-five days before payment was received, it must also be concluded that Hurdman cannot prevail in its assertion of the business expense exception. Therefore, the Debtor-In-Possession, having already demonstrated all the elements required in an action to recover a preferential transfer, is entitled to judgment.

■ Although the parties have not made reference to the provisions of 11 U.S.C. Section 547(c)(4), that section states in pertinent part:

(c) The trustee may not avoid under this section a transfer . . .

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such

creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor ...

Under this section any new value which is extended to the debtor after the receipt of avoidable preferential transfers may be offset against the amounts recoverable as preferential. *Leathers v. Prime Leather Finishes Co.,* 40 B.R. 248 (D.Me.1984). In the present case, it appears that Hurdman rendered services to the Debtor-In-Possession subsequent to July 30, 1982, and subsequent to any billing for services. The value of these services, as stated by Hurdman, is One Thousand Five Hundred Thirty-three and 80/100 Dollars ($1,533.80). Since the latter of the Debtor-In-Possession's payments was intended to cover the billing for the services rendered prior to July 30, 1982, it must be concluded that these services were new value extended to the Debtor-In-Possession for which no payment was received. Accordingly, the amounts recoverable from Hurdman as preferential transfers must be offset by the value of services which were rendered by Hurdman after July 30, 1982. This will entitle the Debtor-In-Possession to recover Twelve Thousand Eight Hundred Sixty-six and 20/100 Dollars ($12,866.20).

In reaching these conclusions, the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

It is ORDERED that Judgment be, and is hereby, GRANTED to the Plaintiff against the Defendant Main Hurdman in the amount of Twelve Thousand Eight Hundred Sixty-six and 20/100 Dollars ($12,-866.20).