In re **EXCEL ENTERPRISES, INC.**

**EXCEL ENTERPRISES, INC.**, Plaintiff,

v.

**SIKES, GARDES & CO.**, Defendant.

Bankruptcy No. 484–00140–LO–11.
Adv. No. 485–0058.

United States Bankruptcy Court,
W.D. Louisiana,
Lafayette–Opelousas Division.

Jan. 19, 1988.

Charles Wooten, Lafayette, La., for Excel.

Marilyn Castle, Lafayette, La., for Sikes, Gardes & Co.

Sim Sandoz, Trustee for Excel.

## OPINION

W. DONALD BOE, Jr., Bankruptcy Judge.

The issues in this adversary proceeding, involving allegedly preferential transfers, have been submitted by the parties for decision based on a joint Stipulation of Facts including joint exhibits. The transfers were payments by check of debtor-plaintiff, Excel Enterprises, Inc., to the creditor-defendant, Sikes, Gardes & Co. (then Broadhurst, Sikes & Gardes) for bookkeeping and accounting services under a May 1983 letter agreement (Exhibit "A"). Pursuant to the letter agreement, Sikes wrote checks for the debtor and actually wrote the checks to itself in payment of invoices (Stipulation no. 4).

The payments were made to Sikes as follows:

| Services during | Invoice date | Invoice amount | Payment date | Payment amount | Days since invoice |
|---|---|---|---|---|---|
| April | May 30 | $2,415.00 | June 29 | same | 30 |
| May | June 30 | $2,182.89 | Sept. 7 | same | 69 |
| June | Jul. 27 [1] | $2,856.42 | Sept. 7 | same | 42 |
| July | Aug. 31 | $2,967.01 | Dec. 22 | $5,848.41 | 113 |
| August | Sept. 30 | $2,881.50 | Dec. 22 | " | 83 |
| September | Oct. 31 | $2,699.27 | Jan. 17 | $5,772.73 | 78 |
| October | Nov. 30 | $3,073.46 | Jan. 17 | " | 48 |
| November | Dec. 31 | $4,207.16 | Unpaid | –0– | N/A |
| December | Jan. 24 | $3,579.83 | Unpaid | –0– | N/A |
| January | Feb. 13 | $3,000.00 | Unpaid | –0– | N/A |

Compiled from Stipulation no. 3 and Exhibit "B." Excel seeks return of the payments made within 90 days before the filing of the petition.

The debtor filed for relief on February 9, 1984, so the 90–day period in which transfers can be avoided reaches back to November 11, 1983. 11 U.S.C. sec. 547(b)(4)(A). The December 22 and January 17 payments, in the amounts of $5,848.41 and $5,772.73, respectively, are the transfers at issue in this proceeding (Stipulation no. 6). The creditor's chief defense is that the payments were "ordinary course of business" payments under Bankruptcy Code section 547(c)(2). For the reasons that follow, the Court holds that the December 22 and January 17 payments were preferential under section 547(b); that the preferential payments were not in the ordinary course of business under section 547(c)(2); and that the transfers are partially excepted from the trustee's avoidance powers under section 547(c)(4), to the extent of $3,000.00 in services rendered *after* the payments.

Section 547(b) allows the trustee to avoid any transfer of property of the debtor—
(1) tc or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made—
 (A) on or within 90 days before the filing of the petition ... and

---

**1.** This invoice, which is among those submitted in Exhibit "B", is dated *June* 27, 1983, rather than July 27 as listed in Stipulation no. 3. The Court assumes that July 27 is correct. Because the September 7 payment of this invoice is not at issue, this disparity does not affect the Court's result.

(5) that enables such creditor to receive more than such creditor would receive [under chapter 7].

11 U.S.C. sec. 547(b) (1979) (amended 1984).[2]

 The payments were obvious preferences under Bankruptcy Code section 547(b), made during the 90–day preference period to a creditor on account of antecedent debts by a debtor presumed to be insolvent under section 547(f),[3] satisfying paragraphs (1), (2), (3), and (4) of section 547(b). The Court rejects the creditor's specious argument that the payments were made by the creditor rather than the debtor. Although the engagement letter allowed the creditor to control "the fund checking account" and to "disburse monies from the fund account," the accounts were nevertheless the debtor's. Disbursement of checks from the debtor's account—whether by a hired accountant or by the debtor itself—is a transfer of property of the debtor to which Bankruptcy Code section 547(b) applies.

The Court takes judicial notice of the bankruptcy case to make the section 547(b)(5) determination. *Rovzar v. Chemical Sales and Service Co. (In re Saco Local Development Corp.)*, 30 B.R. 862, 864–65, 10 B.C.D. 962 (Bankr.D.Me.1983). The schedules filed March 30, 1984, disclose that secured claims alone exceeded liabilities; the debtor's "Balance Sheet As of February 8, 1984" reveals that the day before the petition was filed, the debtor's net worth was a negative $322,568.35. *See* Exhibit "B" to Debtor–in–Possession's Reports of Operation" filed August 8, 1984. These documents demonstrate that the 100% payment amounts to more than the creditor would have received in any distribution to unsecured, non-priority creditors in a chapter 7. *See* 11 U.S.C. sec. 547(b)(5).

Therefore the fifth and final element of a preference is established.

I now turn to the major defense offered by creditor Sikes. Until amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984 (BAFJA), section 547(c) excepted from the trustee's avoidance powers a transfer to the extent it was

(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made not later than 45 days after such debt was incurred;

(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(D) made according to ordinary business terms.

11 U.S.C. sec. 547(c)(2) (1979) (amended 1984).[4]

 The 1984 BAFJA amendment to section 547 applies to "cases filed 90 days after the date of enactment" on July 10, 1984.[5] Congress used the word "cases" in its customary meaning; it was well aware of the distinct meanings of the term "case" and the term "adversary proceeding". The date the petition was filed commencing the "case"—not the date the adversary complaint was filed—is the determinative date. *Nordberg v. Wilcafe, Inc., (In re Chase & Sanborn Corp.)*, 51 B.R. 736, 738 (Bankr.S. D.Fla.1985). Since the debtor's case was commenced in February 1984, the pre-BAFJA section 547 with its 45–day limit applies to this proceeding.

The 45–day limit precludes a valid section 547(c)(2) defense. The payments of December 22 and January 17 were on invoices that ranged from 48 to 113 days old. Payments like these, which are not within the statutory 45–day period, do not qualify for the pre-BAFJA ordinary course of business

---

**2.** The Bankruptcy Amendments and Federal Judgeship Act of 1984 replaced the phrase "of property of the debtor" with "of an interest of the debtor in property."

**3.** Since there has been no attempt to "rebut or meet the presumption" under Fed.R.Evid. 301, the presumption is conclusive.

**4.** The 1984 amendment of section 547(c)(2) inserted "by the debtor" in subparagraph (A) following "incurred" and deleted the subparagraph (B) 45–day provision.

**5.** *See* notes following 11 U.S.C.A. secs. 101 and 547 (1987), *citing* Act of July 10, 1984, Pub.L. No. 98–353, Title III, Subtitle K, sec. 553(a), 98 Stat. 392; Oct. 19, 1984, Pub.L. No. 98–531, sec. 1, 98 Stat. 2704.

exception. *March v. Essex Crane Rental Corp.,* *(In re Transocean Contractors, Inc.),* 61 B.R. 71, 73 (Bankr.W.D.La.1986).

■ Moreover, the date services are rendered—not the invoice date—is the date the debt is "incurred" under pre-BAFJA section 547(c)(2)(B).[6] *See Sandoz v. Wilson Drilling Co. (In re Emerald Oil Co.),* 695 F.2d 833, 837, 9 C.B.C.2d 809, 10 B.C.D. 132, Bankr.L.Rep. para. 69,014 (5th Cir. 1983); and *Hartwig Poultry, Inc., v. CW Service, (In re Hartwig Poultry, Inc.),* 56 B.R. 320, 325 (Bankr.N.D.Oh.1985). The invoices show that services were rendered before the invoice dates (Exhibit "B"). Thus the payment periods even further exceed 45 days.

The ordinary course of business exception requires proof of all four elements, subparagraphs (A) through (D), to prevent avoidance of a transfer. *Paskin v. First Nat'l Bank of Monroe, (In re Donny),* 11 B.R. 451, 452 (Bankr.W.D.Wisc.1981). Since the payments were beyond the 45–day limit, the Court need not address the remaining requirements of section 547(c)(2). The preferential payments are not subject to the ordinary course of business exception claimed by creditor Sikes.

■ Sikes also argues that in "equity" it should be allowed to subtract the amount of invoices which were less than 45 days old at the time of the disputed payments, *i.e.,* the November 30 and December 31 invoices. The Court finds no authority to impute payments to invoices other than those to which the parties have imputed payments by stipulation. Even if the parties had imputed payments to the newer invoices, the payments would still not be ordinary course of business payments, because they would then be inconsistent with the payment history between the parties. Such payments would not be in the "ordinary course of business ... of the debtor and the transferee." 11 U.S.C. sec. 547(c)(2)(C) (1979) (amended 1984).[7]

■ Nevertheless the Code does protect against the unfairness that would result from voiding transfers involving advances of new value given by the creditor to the debtor:

(c) The trustee may not avoid under [section 547] a transfer—

. . . . .

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor....

11 U.S.C. sec. 547(c)(4).[8] This exception to avoidance powers allows a creditor to offset against a transfer any subsequent unsecured credit it extended to the debtor and thereby encourages creditors to continue to extend credit to financially troubled entities. 4 *Collier's on Bankruptcy* para. 547.12 (15th ed. 1987). After the payments it made to itself from the debtor's funds on December 22 and January 17, Sikes continued to render services through January, giving unsecured new value to the debtor. To the extent that Sikes gave "new value" after receiving preferential payments, the preferential payments made before new value was given will not be voidable.

■ Each transfer must be examined independently to determine whether the creditor later replenished the estate. *In re Rustia,* 20 B.R. 131, 135–36, 6 C.B.C.2d 917, 921, 9 B.C.D. 6, 8 (Bankr.S.D.N.Y. 1982).

■ "New value" is rendered on the date that services are performed and not on the date a creditor chooses to bill for services. *Begier v. Airtech Services, Inc. (In re American Int'l Airways, Inc.),* 56

---

6. To treat debts as "incurred" when invoiced would risk that billing vagaries would result in dissimilar treatment of similarly situated creditors.

7. Because of the deletion of subparagraph (B)'s 45–day rule, BAFJA redesignated this subparagraph as section 547(c)(2)*(B).*

8. BAFJA did not amend Code section 547(c)(4).

B.R. 551, 555 (Bankr.E.D.Pa.1986). Sikes gave value by rendering services to the debtor during November ($4,207.16), December ($3,579.83), and January ($3,000.00).

▮ Sikes is not entitled to credit under 547(c)(4) for November services (invoiced in December), because they were performed prior to both preferential payments. *See American Int'l Airways*, 56 B.R. at 555. Under the Code's clear language new value must be given *"after* such transfer." 11 U.S.C. sec. 547(c)(4). This allows a setoff or credit only for subsequent advances and departs from case law under the Act that allowed all preferential transfers to be netted out against unpaid "new value" given during the preference period, whether before or after the preference. *See Riezman v. Phillips Petroleum Company (In re Telecommunication Services, Inc.)*, 55 B.R. 83, 84–85 (Bankr.E.D.Mo.1985).[9] *Accord Rovzar v. Prime Leather Finishes Co. (In re Saco Local Development Corp.)*, 30 B.R. 859, 861–62, 10 B.C.D. 962 (Bankr. D.Me.1983); *In re Rustia*, 20 B.R. at 135; and *Pettigrew v. Trust Company Bank (In re Bishop)*, 17 B.R. 180, 183–85, 8 B.C.D. 852, 5 C.B.C.2d 1515 (Bankr.N.D.Ga.1982).

▮ The January invoice covering $3,579.83 in December services fails to show whether these were rendered before or after the December 22 preference. Section 547(c) defenses are affirmative defenses, with the creditor having the burden of establishing any "subsequent advance" defense. *In re Prescott*, 805 F.2d 719, 728 and 731 (7th Cir.1986).[10] The creditor must show that new value was extended *after* the preferential transfer to establish the "subsequent advance" or "new value" defense. *Chemical Sales (In re Saco )*, 30 B.R. at 866.

Sikes failed to prove any services were rendered in December after the December 22 preferential payment, so no credit will be allowed for the January invoice. However, the January services (invoiced February 13 at $3,000.00) were rendered after the December 22 preference. The December 22 preference is thus unavoidable to the extent of $3,000.00. No other services or other new value was given subsequent to the December 22 or the January 17 preferences.

ACCORDINGLY, the December 22 sum of $5,848.41 is preferential but unavoidable to the extent of $3,000.00; the January 17 sum of $5,772.73 is preferential and fully avoidable; judgment will be entered for plaintiff in the amount of $8,621.14,[11] the amount of the avoidable preferences for

---

9. The netting out or net result rule is inconsistent with the "after such transfer" language of Section 547(c)(4). Moreover, it is inequitable from the viewpoint of a creditor who has not received a preferential payment but who nonetheless has given new value during the preference period. The Court declines to follow two cases which allow "netting out" without regard to whether value was given after the preference. The *Hartwig* court in attempting to follow the "subsequent advance" rule failed to consider whether services were rendered subsequent to preferential payments but only whether rendered subsequent to *billing. In re Hartwig Poultry*, 56 B.R. at 325–26.

Also *Philadelphia Light Supply Co. v. B.R.K. Electronics (In re Philadelphia Light Supply Co.)*, 33 B.R. 734, 11 B.C.D. 284 (Bankr.E.D.Pa.1983), allowed a setoff for "new value" received by the debtor *prior* to the creditor's actual receipt of the preferential transfer. The debtor attempted payment (later found preferential) by sending a check to the creditor, but the debtor's bank erroneously stopped payment. After the debtor mailed the check but before the bank wire-transferred funds to correct its error, the creditor shipped new merchandise ("new value") to the debtor. The court felt that the facts compelled protection of the creditor under section 547(c)(4). *Philadelphia*, 33 Bankr. at 738–39. This Court believes *Philadelphia Light Supply* should be limited to its facts and will follow *Riezman.*

10. *Prescott* was a pre-BAFJA case filed in 1983 (*Prescott*, 805 F.2d 719 at 722); *see* 11 U.S.C. sec. 547(g), added by the 1984 amendments, now *statutorily* giving the creditor the burden of proof.

11.

| | |
|---|---|
| $5,848.41 | [December 22 payment] |
| − $3,000.00 | [subsequent new value] |
| = $2,848.41 | [avoidable amount of December 22 payment] |
| | |
| $2,848.41 | [avoidable amount of December 22 payment] |
| + $5,772.73 | [avoidable January 17 payment] |
| = $8,621.14 | [total avoidable preferences] |

which the creditor Sikes has no valid defense under 11 U.S.C. section 547(c).